# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JESSE CROWELL, *et. al.*, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>FCA U.S. LLC<br><br>    Defendant. | Case No. 1:23-cv-00013-MN |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**Table of Contents**

I.      Introduction..................................................................................................................1

II.     Factual Background ......................................................................................................1

III.    Standard Review ..........................................................................................................3

IV.     Argument .....................................................................................................................3

        A.      Plaintiffs' Consumer Statutory Claims are Well-Pled..............................................3

                i.      Rule 9(b) Pleading Standards Do Not Even Apply to Many of Plaintiffs'
                        Consumer Statutory Claims ....................................................................3

                ii.     Plaintiffs' Allegations Satisfy Rul 9(b)'s Pleading Requirements ...............5

                iii.    FCA's Presale Knowledge Argument is Unsupported .................................9

                iv.     FCA's Duty to Disclose Arguments are Misleading and Unavailing.........10

                v.      FCA's Hodgepodge of State-Specific Arguments are Unavailing ............13

        B.      Equitable Claims ...................................................................................................16

                i.      Plaintiffs' Equitable Claims are Well-Pled................................................16

                ii.     Plaintiffs' Implied Warranty Claims Survive ............................................17

                iii.    Plaintiffs' Magnuson-Moss Warranty Act Claims ....................................20

                iv.     Plaintiffs' Breach of Express Warranty Claims are Well-Pled.................21

        C.      Plaintiffs' UCL Claims are Well-Pled ....................................................................25

        D.      Plaintiffs' Berner, Koss, and Kornblum's Consumer Protection Act Claims
                Should not be Dismissed........................................................................................27

        E.      Plaintiffs Have Standing to Assert Nationwide Class Allegations.........................29

V.      Leave to Amend ........................................................................................................30

VI.     Conclusion ................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Action Rental Holdings, LLC, et al. v. Wacker Neuson Americal Corporation,*
  2022 WL 1597421 (E.D. Wis. 2022) ................................................................. 15

*Alin v. Am. Honda Motor Co.,*
  2010 WL 1372308 (D.N.J. Mar. 31, 2010) ......................................................... 25

*Alpharma, Inc. v. Pennfield Oil Co.,*
  No. 8:03CV401, 2008 WL 2331019 (D. Neb. June 4, 2008) .................................... 5

*Amin v. Mercedes-Benz USA, LLC,*
  301 F. Supp. 3d 1277 (N.D. Ga. 2018) ............................................................... 16

*Amin v. Mercedes-Benz USA, LLC,*
  349 F. Supp. 3d 1338 ...................................................................................... 5

*Anderson v. Apple Inc.,*
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ................................................................ 16

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) ..................................................................................... 3

*B.W.P. Distribs. v. OE Plus, Ltd.,*
  No. 07-CV-9588 (KMK), 2009 WL 1154102) (S.D.N.Y. Mar. 31, 2009) ..................... 6

*Becerra v. GM LLC,*
  241 F. Supp. 3d 1094 (S.D. Cal. 2017) ............................................................... 29

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................ 4

*Benkle v. Ford Motor Co.,*
  No. SA CV 16-1569-DOC (JCGx), 2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ........ 13

*Bergeron v. Dupont,*
  116 N.H. 373, 359 A.2d 627 (1976) ................................................................... 14

*Bergman v. Spruce Peak Realty, LLC,*
  847 F. Supp. 2d 653 (D. Vt. 2012) .................................................................... 5

*Bitton v. Gencor Nutrientes, Inc.,*
  654 F. App'x 358 (9th Cir. 2016) ...................................................................... 18

*Callery v. Hop Energy, LLC,*
No. 20-3652, 2023 WL 2601178 (E.D. Pa. Mar. 22, 2023) ...................................................... 16

*Canfield v. FCA US LLC,*
No. 17-1789-MN-SRF, 2019 WL 133402 (D. Del. Jan. 8, 2019)...................................... 5, 6, 12

*Capson Physicians Ins. Co. v. MMIC Ins., Inc.,*
829 F.3d 951 (8th Cir. 2016) ...................................................................................................... 13

*Carufel v. Minnesota Dep't of Pub. Safety,*
2018 WL 6596287 (Minn. App. 2018)........................................................................................ 15

*Castrol Inc. v. Pennzoil Co.,*
987 F.2d 939 (3d Cir. 1993) ....................................................................................................... 10

*Ceballos v. FCA US LLC,*
No. 8:22-cv-01226-JWH-JDE, 2023 U.S. Dist. LEXIS 112905 (C.D. Cal. Apr. 24, 2023)..... 13

*Central Flyway Air, Inc. v. Grey Ghost Int'l, LLC,*
2022 WL 4534402 (W.D. Wash. Sept. 28, 2022)........................................................................ 31

*Centrella v. Ritz-Craft Corp. of Pa., Inc.,*
No. 2:14-cv-111-jmc, 2018 WL 840038 (D. Vt. Feb. 12, 2018)................................................ 12

*Chapman v. General Motors LLC,*
531 F. Supp. 3d 1257 (E.D. Mich. Mar. 31, 2021) .................................................................... 21

*Chavez v. Wal-Mart Stores, Inc.,*
2014 WL 12591252 (C.D. Cal. June 2, 2014) ............................................................................ 30

*Chimienti v. Wendy's Int'l, LLC,*
No. 22-CV-02880 (HG), 2023 WL 6385346 (E.D.N.Y. Sept. 30, 2023) ..................................... 8

*Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*
717 F. Supp. 2d 156 (D. Mass. 2010) ........................................................................................ 14

*Click v. Gen. Motors LLC,*
No. 2:18-cv-455, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020) ............................................... 21

*Coba v. Ford Motor Co.,*
12–1622 (DRD), 2013 WL 244687 (D.N.J. Jan. 22, 2013) ....................................................... 26

*Coba v. Ford Motor Co.,*
932 F.3d 114 (3d Cir. 2019) ....................................................................................................... 25

*Cohen v. Subaru of Am., Inc.*,
    No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307 (D.N.J. Mar. 10, 2022)........................11, 19

*Corbett v. PharmaCare U.S., Inc*.,
    567 F. Supp. 3d 1172 (S.D. Cal. 2021) ....................................................................... 18

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ...................................................................................... 14

*CRM Collateral II, Inc. v. Tri-County Metro. Transp. Dist. of Or.*,
    No. CV 08-1266-PK, 2009 WL 3054959 (D. Or. Sep. 18, 2009)................................ 13

*Crown Parts & Machs., Inc. v. Euro Mach. Tool Co.*,
    No. CV 17-102-BLG-TJC, 2019 WL 4258873 (D. Mont. Sep. 9, 2019) .................... 14

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
    2020 WL 639613 (D. Neb. 2020) ............................................................................... 14

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (Cal. Ct. App. 2006)............................................................... 28

*Davis v. BMW of NA, LLC*,
    2022 WL 3646571 (D.N.J. Aug. 23, 2022) ................................................................ 16

*Dermatology Specialists of Augusta, Inc. v. Daikin Applied Americas Inc.*,
    No. CV 116-058, 2019 WL 97831 (S.D. Ga. Jan. 3, 2019) ....................................... 22

*Diaz v. FCA US LLC*,
    Civil Action No. 21-cv-00906-EJW, 2022 WL 4016744 (D. Del. Sep. 2, 2022) .............. 26, 33

*Diaz v. FCA US LLC*,
    No. 21-cv-00906-EJW, 2023 WL 6160560 (D. Del. Sept. 21, 2023) ................................ 21, 23

*Donachy v. Playground Destination Props., Inc.*,
    No. 10-4038 (RMB/KMW), 2013 WL 3793033 (D.N.J. July 19, 2013)................................ 10

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
    383 F. Supp. 3d 343 (D.N.J. 2019) ............................................................................ 10

*Ewalt v. GateHouse Media Ohio Holdings II, Inc.*,
    No. 2:19-cv-4262, 2021 WL 825978 (S.D. Ohio Mar. 4, 2021)................................. 5

*Falk v. Gen. Motors Corp.*,
    496 F.Supp.2d 1088 (N.D. Cal. 2007) ....................................................................... 13

*Ferreira v. Sterling Jewelers, Inc.*,
    130 F. Supp. 3d 471 (D. Mass. 2015) ........................................................ 8

*Figueroa* v. *Point Park Univ.*,
    *553 F. Su*pp. 3d 259 (W.D. Pa. 2021).......................................................... 19

*Flores v. FCA US LLC*,
    No. 20-10972, 2021 WL 1122216 (E.D. Mich. Mar. 24, 2021).................. 24

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018)................................................................. 17

*Francis E. Parker Mem'l Home, Inc. v. Ga.-Pacific LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) ........................................................... 24

*Francis v. General Motors, LLC*,
    504 F. Supp. 3d 659 (E.D. Mich. 2020)............................................... 25, 26

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    No. 12-cv-02432-WYD-KMT, 2015 WL 4036319 (D. Colo. July 1, 2015) ........... 18

*Garner v. Glob. Plasma Sols. Inc.*,
    590 F. Supp. 3d 738 (D. Del. 2022) .......................................................... 33

*Genentech, Inc. v. Amgen Inc.*,
    No. 18-924-CFC, 2019 WL 3290167 (D. Del. July 18, 2019) .................. 19

*Giles v. Gen. Motors Acceptance Corp.*,
    494 F.3d 865 (9th Cir. 2007)..................................................................... 16

*Giura v. Bartolomeo*,
    No. 291952, 2010 WL 3767563 (Mich. Ct. App. Sept. 28, 2010)............ 17

*Gold v. Lumber Liquidators, Inc.*,
    323 F.R.D. 280 (N.D. Cal. 2017) .............................................................. 13

*Goodman v. HTC Am., Inc.*,
    2012 WL 2412070 (W.D. Wash. June 26, 2012) ........................................ 6

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    525 F. App'x 94 (3d Cir. 2013) ................................................................. 12

*Greene v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ........................................................... 5

*Gregorio v. Ford Motor Co.*,
　522 F. Supp. 3d 264 (E.D. Mich. 2021) ................................................................. 26

*Guzman v. Polaris Indus.*,
　49 F.4th 1308 (9th Cir. 2022) ................................................................................ 19

*Haag v. Hyundai Motor Am.*,
　969 F. Supp. 2d 313 (W.D.N.Y. 2013) ................................................................... 25

*Harnish v. Widener University School of Law*,
　931 F. Supp. 2d 641 (D.N.J. 2013) .......................................................................... 8

*Hickman v. Subaru of Am., Inc.*,
　No. 1:21-cv-02100-NLH-AMD, 2022 WL 11021043 (D.N.J. Oct. 19, 2022) ........................ 25

*Hill v. Brush Engineered*,
　383 F. Supp.2d 814 (D. Md. 2005) .......................................................................... 14

*Holve v. McCormick & Co.*,
　334 F. Supp. 3d 535 (W.D.N.Y. 2018) ....................................................................... 5

*Hopkinton Friendly Serv. v. Glob. Cos. LLC*,
　384 F. Supp. 3d 179 (D. Mass. 2019) ...................................................................... 14

*Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*,
　2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) ........................................................... 28

*Houston v. Medtronic*,
　957 F. Supp. 2d 1166 (C.D. Cal. 2013) .................................................................... 10

*Hudock v. LG Elecs. U.S.A., Inc.*,
　12 F.4th 773 (8th Cir. 2021) .................................................................................... 8

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
　No. 3:19-md-2885, 2022 WL 748462 (N.D. Fla. Mar. 12, 2022) ............................. 13, 14

*In re Arby's Rest. Group Litig.*,
　No. 1:17-cv-1035, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ................................... 5

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
　155 F. Supp. 2d 1069 (S.D. Ind. Jul. 27, 2001) ........................................................ 28

*In re Carrier IQ, Inc.*,
　78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................... 12, 13

*In re Chevrolet Bolt EV Battery Litig.*,
    633 F. Supp. 3d 921 (E.D. Mich. Sept. 30, 2022) ..................................................... 22

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................... 8

*In re FCA US LLC Monostable Electronic Gearshift Litig.*,
    335 F. Supp. 3d, 582(E.D. Mich. 2018) ................................................................... 16

*In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*,
    No. 3:17-md-2779 (MAS) (TJB), 2018 U.S. Dist. LEXIS 149379(D.N.J. Aug. 31, 2018) .13,14

*In re GM Air Conditioning Litig.*,
    406 F. Supp. 3d 618 (E.D. Mich. 2019) ................................................................... 17

*In re Macbook Keyboard Litig.*,
    No. 5:18-cv-02813-EJD, 2019 WL 1765817,at (N.D. Cal. Apr. 22, 2019) .............................11

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................................... 19

*In re Natera Prenatal Testing Litig.*,
    --- F. Supp.3d ---, No. 22-cv-00985-JST, 2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) ........ 12

*In re Shop-Vac Marketing and Sales Practices Litig.*,
    NO. 4:12-md-2380, 2014 WL 3557189 (M.D. Pa. July 17, 2014) ......................................... 21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................... 28

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ................................................................... 28

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    Civil Action No. 16-2765 (JLL), 2017 WL 1902160 (D.N.J. May 8, 2017) ............... 13, 16, 25

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) .................................................................... 5

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ................................................................................ 7

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (Ct. App. Cal. 2007)................................................................ 19

*Johnson v. FCA US LLC*,
    555 F.Supp.3d 488 (E.D. Mich. 2021) ........................................................................... 10

*Kahn v. FCA US LLC*,
    2019 WL 3955386 (C.D. Cal. 2019) ............................................................................... 27

*Kavon v. BMW of N. Am., LLC*,
    605 F. Supp. 3d 622 (D.N.J. 2022) ................................................................................... 8

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No.,
    17-13544, 2018 WL 4144683 (D.N.J. Aug. 29, 2018) .............................................. 6, 7

*Kitchen Winners NY Inc. v. Rock Fintek LLC*
    2023 U.S. Dist. LEXIS 57032 (S.D.N.Y. 2023) ........................................................... 15

*Kreidler v. Pixler*,
    No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006) .............................. 6

*Kwintkiewicz v. Bentley Motors, Inc.*
    2011 WL 1336576 (D. Md. 2011) ................................................................................. 14

*Landau v. Viridian Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016) .............................................................................. 6

*Layman v. Binns*,
    35 Ohio St. 3d 176, 519 N.E.2d 642 (1988) ................................................................. 13

*Leonard v. Abbott Labs., Inc.*,
    No. 10-CV-4676(ADS) (WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ............... 5

*Luong v. Subaru of Am., Inc.*,
    No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) .......................... 29

*Macomber v. Travelers Prop. & Cas. Corp.*,
    277 Conn. 617, 894 A.2d 240 (2006) ............................................................................ 14

*Manhattan Constr. Co. v. McArthur Elec., Inc.*,
    No. 1:06-cv-1512-WSD, 2008 WL 11333433 (N.D. Ga. Jul. 7, 2008) ........................ 16

*Marcum v. Columbia Gas,
Trans.*, 423 F.Supp.3d 115 (E.D.Penn. 2019) ................................................................ 9

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ............................................................................................ 8

*Martinez v. Lewis*,
   969 P.2d 213 (Colo. 1998) ........................................................................................ 11

*Massey v. Flowers Foods, Inc.*,
   No. CIV-16-1233-R, 2017 WL 3639150 (W.D. Okla. Apr. 21, 2017) ....................... 11

*Maugain v. FCA US LLC*,
   2023 WL 1796113 (D. Del. Feb. 7, 2023) ................................................................ 30

*McCarthy v. Toyota Motor Corp.*,
   No. 8:18-cv-00201-JLS-KES, 2019 WL 3220579 (C.D. Cal. Apr. 9, 2019) ............. 26

*McCoy v. Samsung Elecs. Am., Inc.*,
   No. 21-19470 (KM) (JSA), 2023 WL 6140641 (D.N.J. Sep. 20, 2023) ................. 9, 10

*McCracken v. R.J. Reynolds Tobacco Co.*,
   2018 WL 3130402 (E.D. Pa. 2018) .......................................................................... 13

*McCracken v. Verisma Systems, Inc.*,
   131 F. Supp. 3d 38 (W.D.N.Y. 2015) ......................................................................... 7

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ................................................................................. 26

*McMahon v. Volkswagen Aktiengesellschaft*,
   2023 WL 4045156 (D. N.J. June 16, 2023) .............................................................. 20

*McMillian v. GEICO Indem. Co.*,
   Civil Action No. 23-01671 (GC) (DEA), 2023 WL 7039535 (D.N.J. Oct. 26, 2023) ............... 7

*Michels v. Monaco Coach Corp.*,
   298 F. Supp. 2d 642 (E.D. Mich. 2003) ..................................................................... 4

*Milisits v. FCA US LLC*,
   20-cv-11578, 2021 WL 3145704 (E.D. Mich. July 26, 2021) ................................... 23

*Milman v. FCA U.S., LLC*,
   2018 WL 5867481 (C.D. Cal. 2018) ......................................................................... 16

*Monopoli v. Mercedes-Benz USA, LLC*,
   Civil Action No. 1:21-cv-01353-SDG, 2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ............... 11

*Montoya v. CRST Expedited, Inc.*,
   404 F. Supp. 3d 364 (D. Mass. 2019) ........................................................................ 7

*Mulligan v. Choice Mortg. Corp. USA,*
    Civil No. 96-596-B, 1998 WL 544431 (D.N.H. Aug. 11, 1998) ................................ 7

*Murphy v. Toyota Motor Sales United States,*
    No. 2:20-cv-05892-VAP-ADSx, 2021 WL 2801456 (C.D. Cal. Apr. 21, 2021) ..................... 11

*MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co., Inc.,*
    383 F. Supp. 3d 307 (D. Vt. 2019) ......................................................... 28

*Napoli-Bosse v. Gen. Motors LLC,*
    453 F. Supp. 3d 536 (D. Conn. 2020) ...................................................... 23

*Neale v. Volvo Cars of N. Am., LLC,*
    794 F.3d 353 (3d Cir. 2015) .............................................................. 30

*NovaFund Advisors, LLC v. Capitala Grp., LLC,*
    2022 WL 624524 (D. Conn. 2022) .......................................................... 13

*Oro BRC4, LLC v. Silvertree Apts., Inc.*
    2021 WL 184686 (S.D. Ohio 2021) ......................................................... 12

*Studio 1220, Inc. v. Bank of America Corp.*
    No. 21-16066, 2022 U.S. App. LEXIS 13896 (9th Cir. May 23, 2022) ....................... 13

*Opheim v. Volkswagen Aktiengesellschaft,*
    No. 20-02483 (KM) (ESK), 2021 WL 2621689 (D.N.J. June 25, 2021) ..................... 6, 15

Oregon UTPA: *Silva v. Unique Bev. Co., LLC,*
    No. 3:17-cv-00391-HZ, 2017 WL 2642286 (D. Or. June 15, 2017) ........................... 4

*Parillo v. Werner Co.,*
    No. 3:14-cv-369, 2015 U.S. Dist. LEXIS 98361 (S.D. Ohio July 28, 2015) ................. 13
*Paulsen v. Abbott Labs.,*
    368 F. Supp. 3d 1152 (N.D. Ill. 2019) .................................................... 7

*Persad v. Ford Motor Co.,*
    No. 17-12599, 2018 WL 3428690 (E.D. Mich. July 16, 2018) .............................. 23

*Phillips v County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) .............................................................. 3

*Pierre v. Healthy Bev., LLC,*
    No. 20-4934, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) ................................... 17

*Pistorio v. FCA US LLC*,
   No. 20-cv-11838, 2022 WL 141524 (E.D. Mich. Jan. 14, 2022)..............................................24

*Poulin v. Ford Motor Co.*,
   147 Vt. 120, 513 A.2d 1168 (1986) .........................................................................................4

*Professional Maintenance Systems, Inc. v. Baltimore County, Maryland, et al.*
   2022 WL 2359355 (D. Md. June 30, 2022) .............................................................................7

*Razen v. FCA US LLC*,
   2019 WL 7482214 (M.D. Fla. Oct. 23, 2019)........................................................................25

*Reynolds v. FCA US LLC*,
   546 F. Supp. 3d 635 (E.D. Mich. June 30, 2021)..................................................................20

*Rife v. Newell Brands, Inc.*,
   632 F. Supp. 3d 1276 (S.D. Fla. 2022)....................................................................................4

*Rikos v. Procter & Gamble, Co.*,
   799 F. 3d 497 (6th Cir. 2015) ..................................................................................................7

*Riley v. Gen Motors, LLC*,
   No. 21-0924, 2022 WL 787871 (S.D. Ohio Mar. 15, 2022) ..................................................23

*Robinson v. General Motors LLC*,
   No. 20-663, 2021 WL 3036353 (D. Del. July 19, 2021) .........................................................6

*Rowland v. Bissell Homecare, Inc.*,
   73 F.4th 177 (3d Cir. 2023) ...................................................................................................20

*Rubin v. Oregon*,
   No. 3:19-cv-01377-IM, 2022 WL 2713904 (D. Or. July 13, 2022)........................................15

*Sadeghi-A v. Daimler Trucks N. Am. LLC*,
   No. 19-cv-2373 (MJD/ECW), 2021 WL 856919 (D. Minn. Mar. 8, 2021) ...........................12

*Schnell v. Bank of New York Mellon*,
   828 F.Supp.2d 798 (E.D. Pa. 2011)........................................................................................4

*Schramm v. Exactech, Inc.*,
   17-CV-200-RWS, 2018 WL 11448995 (N.D. Ga. Feb. 20, 2018)24.....................................14

*Seiler v. E.F. Hutton & Co.*,
   102 F.R.D. 880 (D.N.J. 1984) .................................................................................................5

*Shaaya v. Jaguar Land Rover N. Am. LLC*,
    2:20-cv-5679, 2022 WL 2341599 (D.N.J. June 29, 2022)....................................................... 22

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ....................................................................................................... 27

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D.N.J. 2013) ..............................................................................................11

*Sulligan v. Ford Motor Co.*,
    No. 22-11668, 2023 WL 5180330 (E.D. Mich. Aug. 11, 2023) ............................................. 20

*Tatum v. Oberg*,
    650 F. Supp. 2d 185 (D. Conn. 2009) ......................................................................................... 4

*Terrill v. Electrolux Home Prods., Inc.*,
    753 F. Supp. 2d 1272 fn. 8 (S.D. Ga. 2010)............................................................................... 19

*Tershakovec v. Ford Motor Co.*,
    No. 17-21087-CIV-MORENO, 2018 WL 3405245 (S.D. Fla. July 12, 2018) ....................... 17

*Thornell v. Seattle Serv. Bureau, Inc.*,
    363 P.3d 587 (Wash. 2015) ......................................................................................................... 29

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131 (3d Cir. 2009) ....................................................................................................... 30

*Torres v. Botanic Tonics, LLC*,
    No. 23-CV-01460-VC, 2023 WL 8852754 (N.D. Cal. Dec. 21, 2023) ..................................... 4

*Track, Inc. v. ASH N. Am., Inc.*,
    2023 WL 2733679 (W.D. Wis. Mar. 31, 2023) ......................................................................... 28

*Twardzik v. HP Inc.*,
    2022 WL 606092 (D. Del. 2022) ................................................................................................. 9

*U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*,
    551 N.E.2d 922 (Mass. App. Ct. 1990)....................................................................................... 4

*Vernon v. Qwest Communications Intern., Inc.*,
    643 F. Supp. 2d 1256 (W.D. Wa. 2009) ..................................................................................... 7

*Watts v. Jackson Hewitt Tax Service Inc.*,
    579 F. Supp. 2d 334 (E.D.N.Y. 2008) ....................................................................................... 12

*Webb v. Volvo Cars of N.A.,*
  *LLC*, No. 13-2394, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018)................................ 22

*Weisblum v. Prophase Labs, Inc.,*
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................. 14

*Wesley v. Samsung Electronics America, Inc.,*
  20-18629, 2022 WL 16509541 (D.N.J. Oct. 28, 2022) ........................................ 23

*Weston v. Subaru of Am., Inc.,*
  No. 1:20-cv-05876, 2022 WL 1718048 (D.N.J. May 26, 2022)................................ 6

*White v. Symetra Assigned Benefits Serv. Co.,*
  No. 20-1866 MJP, 2022 WL 3092849 (W.D. Wash. Aug. 3, 2022) .......................... 7

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,*
  536 F.3d 663 (7th Cir. 2008) ........................................................................ 4

*Womick v. Kroger Co.,*
  No. 21-CV-00574-NJR, 2022 WL 673095 (S.D. Ill. Mar. 7, 2022)........................... 4

*Woods v. Maytag Co.,*
  807 F. Supp. 2d 112 (E.D.N.Y. 2011) ..............................................................11

*Wozniak v. Ford Motor Co.,*
  No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) .......................... 10

*Zeiger v. WellPet LLC,*
  526 F. Supp. 3d 652 (N.D. Cal. 2021) .............................................................. 27

## **Statutes**

Neb. Rev. Stat. § 59-1609 .............................................................................. 28

New York GBL 349&350 ................................................................................. 4

Vt. Stat. 9, § 4072 ........................................................................................ 28

Wis. Stat. § 100.18(1) ................................................................................... 15

## **Rules**

Fed. R. Civ. P. 8(a) ........................................................................................ 5

Fed. R. Civ. P. 9(b)........................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 3

Fed. R. Civ. P. 23(b)(2) ......................................................................................................... 15

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 15

## I.      Introduction

Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") on December 20, 2023, alleging that, among other things, Defendant FCA U.S. LLC's ("FCA") 2021-2023 model year Jeep Wrangler 4xe and 2022-2023 Jeep Grand Cherokee 4xe (the "Class Vehicles") contain a key defect whereby they are locked into the Fuel and Oil Refresh Mode ("FORM") for extended periods of time, which makes electric-only or electric assisted driving impossible (the "Defect"). FCA concealed the Defect and actively misrepresented the capabilities of the Class Vehicles. [ECF No. 49]. On February 9, 2024, FCA filed a motion to dismiss Plaintiffs' CAC ("MTD"), arguing that the Class Vehicles are operating as designed and Plaintiffs' claims therefore lack a viable factual or legal basis. [ECF No. 53]. Plaintiffs submit this Answering Brief in opposition to FCA's MTD.

## II.     Factual Background

FCA designs, develops, manufactures, and distributes the Class Vehicles to consumers through its dealer network throughout the United States. In response to government emissions regulations, FCA has invested in electrifying its vehicle lineup. CAC ¶ 51. The Jeep Brand's Global President stated that the "electrification of the Jeep lineup will allow commuters to travel *solely* on electric power[.]" *Id*. ¶ 52 (emphasis added). The Class Vehicles cost between $20,000 and $24,000 *more* than gasoline-only Jeep vehicles. *Id*. ¶ 54.

The 2021-2023 Jeep Wrangler 4xes, plug-in hybrid vehicles, first went on sale in or around April 2021. *Id*. ¶ 55. The Wrangler 4xe contains both gasoline engine and electric motors to enable gasoline-only driving, battery-only driving, or a combination of the two. *Id*. ¶ 63. It is equipped with a lithium-ion battery pack that FCA claims is capable of up to 21 miles of electric-only propulsion. *Id*. FCA advertises the Wrangler 4xe as being able to drive 21 miles on battery

1

alone, and that customers could "get around town on all-electric power." *Id*. ¶ 56, 59-61. FCA stated on its website that Wrangler 4xe could provide daily fully electric commutes. *Id*. ¶ 64. The 2022 and 2023 Jeep Grand Cherokees were introduced soon after the Jeep Wrangler 4xe and utilize the same hybrid powertrain. *Id*. ¶ 68. FCA advertises on its website that the Grand Cherokee is capable of up to 25 miles of pure electric driving. *Id*. ¶ 70. FCA has and continues to advertise the Class Vehicles' ability to function and perform in cold weather. *Id*. ¶¶ 72-75.

The Class Vehicles contain a defect whereby they enter FORM to maintain engine lubrication properties. While in FORM, drivers cannot utilize or even access electric-only or electric-assisted propulsion to drive their Class Vehicles. *Id*. ¶ 77. FORM manifests frequently and for durations lasting months. FCA's manual states that "[f]requent short trips at low ambient temperature conditions are more likely to trigger the lubrication based mode." *Id*. ¶ 79. FCA's manual for the 2021 Jeep Wrangler 4xe indicates the Class Vehicles' "engine may run or a period of up to 20 minutes when fully warm whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips." *Id*. ¶ 83. FCA later amended this guidance and explained that the "engine may run or a period of up to 2.5 hours when fully warm whenever the vehicle is operations (no electric only operation)." *Id*. ¶ 85. This is nearly eight times the duration previously represented to Plaintiffs. FCA also admits that the Defect is more prevalent during the winter season. *Id*. ¶ 88. FCA therefore made misleading representations in the Class Vehicle warranty books regarding the duration of FORM and ability of the Class Vehicles to exit FORM.

Each of the named plaintiffs relied on FCA's representations regarding the Class Vehicles' electric range. See e.g., *Id*. ¶¶ 110, 123, 133, 145, 164, 174, 182, 190,. Each named plaintiff

has experienced the Defect whereby they were unable to drive on electric power alone. *See e.g., Id*. ¶¶ 113, 126, 136, 148, 167, 177, 185, 193.

Due to the Defect, FCA's material omissions regarding the Defect, and FCA's misleading representations surrounding the Defect, Plaintiffs paid an enormous premium for the Class Vehicles that frequently lack electric-only or electric-assisted propulsion. *Id*. ¶ 93.

## III.    Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The plaintiff need only plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal citations omitted). Thus, at the pleading stage, a plaintiff need only allege facts which, when taken as true, raise "a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.    Argument

### A.  Plaintiffs' Consumer Statutory Claims are Well-Pled.

#### i.   Rule 9(b) Pleading Standards Do Not Even Apply to Many of Plaintiffs' Consumer Statutory Claims.

FCA bundles dozens of statutory and common law claims into a single, inaccurately titled "fraud-based claims" category and argues that Rule 9(b) pleading standards apply to all of them. FCA's position is mistaken and bereft of any state-by-state analysis. The purpose of consumer

3

statutory claims is "to protect consumers by adding a claim for relief that is easier to establish than is common law fraud." *Poulin v. Ford Motor Co.*, 147 Vt. 120, 125-26, 513 A.2d 1168, 1172 (1986) (citations omitted). "To require the higher degree of proof would frustrate the legislative intent." *Id*. It is therefore unsurprising that many of Plaintiffs' consumer statutory claims do not require pleading with Rule 9(b) specificity.[1] Others have a scope that extends beyond fraud—which allows Plaintiffs to pursue claims without invoking Rule 9(b).[2]

---

[1] **Georgia FBPA**: *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1347 n. 8 (citing to *In re Arby's Rest. Group Litig.*, No. 1:17-cv-1035, 2018 WL 2128441, at *21 (N.D. Ga. Mar. 5, 2018) (determining that the plaintiffs' GFBPA claim was not subject to Rule 9(b) 's heightened pleading standard.)); **Ohio CSPA**: *Ewalt v. GateHouse Media Ohio Holdings II, Inc*., No. 2:19-cv-4262, 2021 WL 825978, at *16 (S.D. Ohio Mar. 4, 2021) ("Given the broad remedial purpose of the [OCSPA] statute, this Court contemplates that only the Rule 8 standard is required."); **Nebraska UDTPA**: *Alpharma, Inc. v. Pennfield Oil Co.*, No. 8:03CV401, 2008 WL 2331019, at *2 (D. Neb. June 4, 2008); **New Hampshire CPA**: *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS) (WDW), 2012 WL 764199, at *19-20 (E.D.N.Y. Mar. 5, 2012); **New York GBL 349&350**: *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) ("Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)."); **Oregon UTPA**: *Silva v. Unique Bev. Co., LLC*, No. 3:17-cv-00391-HZ, 2017 WL 2642286, at *13 (D. Or. June 15, 2017); **Vermont CFA**: *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671-72 (D. Vt. 2012).

[2] **California UCL**: *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021) *Torres v. Botanic Tonics, LLC*, No. 23-CV-01460-VC, 2023 WL 8852754, at *4-5 (N.D. Cal. Dec. 21, 2023); **Connecticut UTPA**: *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009); **Illinois CFDBPA**: *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669-70 (7th Cir. 2008); *Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 673095, at *2 (S.D. Ill. Mar. 7, 2022); **Massachusetts Ch. 93A**: *B.W.P. Distribs. v. OE Plus, Ltd.*, No. 07-CV-9588 (KMK), 2009 WL 1154102, at *9, fn. 7.) (S.D.N.Y. Mar. 31, 2009) ("Massachusetts courts have held that because Chapter 93A, § 11 covers 'unfair' practices, the facts underlying a Chapter 93A, § 11 claim do not need to meet Massachusetts's equivalent Rule 9(b) standard of particularity."); *U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*, 551 N.E.2d 922, 925 (Mass. App. Ct. 1990) (same); **Michigan CPA**: *Michels v. Monaco Coach Corp*., 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003) (noting that the CPA extends beyond Fraud and declining to apply Rule 9(b) analysis); **Pennsylvania UTPCPL**: *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (noting that the UTPCPL was amended to extend beyond fraud to include "deceptive conduct" and, after reviewing applicable state and federal decisions, determining that Rule 9(b) pleading standards should not apply to allegations of deceptive conduct); *Schnell v. Bank of New York Mellon*, 828 F.Supp.2d 798, 807 (E.D. Pa. 2011) **Washington CPA**: *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1310 (S.D. Fla.

The appropriate standard of review, Rule 8, is easily met for Plaintiffs' consumer statutory claims. *Canfield v. FCA US LLC*, 2019 WL 133402, at *13 (D. Del. Jan. 8, 2019) ("Plaintiffs have met pleading standards under Rule 8 by adequately pleading the alleged defect, [defendant's] knowledge of the alleged defect, and [defendant's] concealment of this information.").

<u>ii. Plaintiffs' Allegations Satisfy Rule 9(b)'s Pleading Requirements.</u>

When considering the claims that are subject to Rule 9(b), it is important to note that Rule 9(b) is "not intended to abrogate the basic pleading requirements of Fed. R. Civ. P. 8(a)." *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 886 (D.N.J. 1984). Instead, Rule 9(b)'s purpose is simply "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against specious charges." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018) (citation omitted). To satisfy Rule 9(b), a plaintiff must simply "plead the who, what, when, where and how: the first paragraph of any newspaper story.'" *Id*. (quoting *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)).

The supplemented and well-pled CAC clearly includes the who, what, when, where, and how. The "who" is FCA. *See*, *e.g.* CAC ¶ 2. The "what" is knowledge of the Defect, which deprives users of electric driving. *See*, *e.g. Id. at* ¶¶ 3-4. The "when" is prior to or at the time of the sale of the Class Vehicles. *See*, *e.g. Id.* ¶¶ 110, 381. The "where" are the channels through which FCA sold the Class Vehicles. *See*, *e.g. Id.* ¶¶ 114, 122, 132. The "how" are FCA's misleading statements and refusal to disclose the Defect, recall the Class Vehicles, or offer a suitable repair or replacement despite exclusive knowledge. *See*, *e.g. Id.* ¶¶ 3-4, 6.

---

2022)*Kreidler v. Pixler*, No. C06-0697RSL, 2006 WL 3539005, at *11 (W.D. Wash. Dec. 7, 2006) (Declining to apply Rule 9(b) analysis and emphasizing that CPA claims are not fraud claims).

Moreover, "where a plaintiff alleges 'fraud-by-omission . . . the Rule 9(b) standard is relaxed . . . because a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Robinson v. General Motors LLC,* No. 20-663, 2021 WL 3036353, at *4 (D. Del. July 19, 2021) (quoting *Kearney v. Bayerische Motoren Werke Aktiengesellschaft,* No. 17-13544, WL 4144683, at *10 (D.N.J. Aug. 29, 2018)). Nevertheless, FCA seeks the impossible and demands more details about how and when Plaintiffs were not informed of the Defect. MTD at 12-13. The CAC is replete with allegations that the Class Vehicles contained a material defect and that FCA withheld the existence of the Defect from consumers. *See*, *e.g.,* CAC ¶¶ 3, 93, 94, 97. Moreover, Plaintiffs allege that "[p]rior to [] purchase, neither Defendant nor any of its agents, dealers, or other representatives informed [plaintiffs] of the Defect." *See*, *e.g. Id*. at ¶ 165. This is more than enough to survive dismissal. *See*, *e.g. Weston v. Subaru of Am., Inc.*, No. 1:20-cv-05876, 2022 WL 1718048, at *5 (D.N.J. May 26, 2022) ("Here, Plaintiffs have sufficiently alleged the content of the omitted information and that [defendant], before the time of sale of Plaintiffs' vehicles, failed to disclose it, allegedly affecting Plaintiffs' purchasing decisions...That is sufficient at this stage."); *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-02483 (KM) (ESK), 2021 WL 2621689, at *14 (D.N.J. June 25, 2021) (holding that plaintiffs are not required to identify representations that they relied upon and which omitted the information at issue—instead, plaintiffs can simply allege that the defendant did not reveal material information and defendant's omission led the plaintiff to purchase the product); *Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622, 643-44 (D.N.J. 2022) (determining that the plaintiffs need not allege seeing the defendant's materials prior to purchase because disclosure of the defect would logically have prevented the consumers from purchasing—thus satisfying reliance).

FCA next argues that Plaintiffs did not identify which statements or representations they relied upon. This argument lacks merit. Most consumer statutory claims do not require consumers to prove that they specifically relied on the deception.[3] Moreover, FCA's cases on the subject are inapplicable. For example, *Prof'l Maint. Sys. v. Balt. Cty.* did not involve consumer statutory claims or fraud by concealment. Rather, it dealt with affirmative misrepresentations: 1) made in a form submitted to the co-defendant, rather than plaintiff, the content of which plaintiff learned about *well after* the transaction; or 2) pled without any accompanying information as to time, place, and manner. No. 1:22-cv-00207-SAG, 2022 WL 2359355, at *7 (D. Md. June 30, 2022). Defendant's other cases on the subject[4] share a common theme—an inability to identify and

---

[3] *See, e.g., In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d at 1015 n.21("Unlike for common law fraud, reliance is not an element of an ICFA claim."); *Harnish v. Widener University School of Law*, 931 F. Supp. 2d 641, 651 (D.N.J. 2013) (While common law fraud requires proof of reliance, "consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss."); *McMillian v. GEICO Indem. Co*., Civil Action No. 23-01671 (GC) (DEA), 2023 WL 7039535, at *4 (D.N.J. Oct. 26, 2023) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012)) ("unlike common law fraud, the NJCFA does not require proof of reliance"); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 397-98 (D. Mass. 2019) (summarizing Iowa law as requiring only simple causation as evaluated by a "but-for test"); *McCracken v. Verisma Systems, Inc.*, 131 F. Supp. 3d 38, 46 (W.D.N.Y. 2015) (internal citations omitted) ("A GBL § 349 claim brought by a private plaintiff 'does not require proof of actual reliance.'"); *Hudock v. LG Elecs. U.S.A., Inc*., 12 F.4th 773, 776 (8th Cir. 2021) (noting that reliance is not required for Minnesota Consumer Fraud Act claims); *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (noting that proof of actual reliance is not required for a 93A claim); *Vernon v. Qwest Communications Intern., Inc.*, 643 F. Supp. 2d 1256, 1268 (W.D. Wa. 2009) (A Washington CPA claim does "not require a plaintiff to allege individual reliance on Defendant's conduct, particularly where the non-disclosure of a material fact is alleged."); *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 3092849, at *11 (W.D. Wash. Aug. 3, 2022) (noting that reliance is not required for a WCPA claim); *Rikos v. Procter & Gamble, Co.*, 799 F. 3d 497, 516 (6th Cir. 2015) ("…limited case law indicates that proof of individual reliance or causation is not required under the New Hampshire CPA."); *Mulligan v. Choice Mortg. Corp. USA*, Civil No. 96-596-B, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998) ("For such conduct to be actionable [under the New Hampshire CPA], the plaintiff need not show that he or she actually relied on the deceptive acts or practices.").

[4] Several of Defendant's cites in FN5 are not remotely relevant to its argument. *See e.g. Paulsen*

connect misleading conduct with the Plaintiffs' purchasing decisions. In contrast here, Plaintiffs

identify specific, false statements made by FCA, state the manner in which the statements were

made, and allege that Plaintiffs relied upon these statements and omissions when deciding to pay

a five-figure premium for the hybrid vehicles. *See, e.g.,* CAC ¶¶ 62, 70, 110, 123, 133, 145, 164.

FCA next argues that its statements identified in the CAC are "puffery."[5] As Plaintiffs

allege, however, FCA is not making general and vague boasts. Rather, FCA is making specific

claims about the Class Vehicles' ability to operate on electric-only power, including in the win-

ter, noting the specific mileage the cars can run exclusively on electric power, and telling cus-

tomers that they can expect "fully electric daily commutes" when the vehicle is charged. *See*, *e.g.*

*Id.* ¶¶ 59-64,70,72-73. This is not puffery. *See Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945-46

(3d Cir. 1993) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and

commendatory language … Here, the claim is both specific and measurable by comparative re-

search."); *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 359 (D.N.J. 2019)

("'false claims that explicitly or implicitly address product attributes or importance to customers

and make statements that are measurable by comparative research are not puffery.'"); *Donachy*

*v. Playground Destination Props., Inc.* No. 10-4038 (RMB/KMW), 2013 WL 3793033, at \*6

(D.N.J. July 19, 2013) ("claims that explicitly or implicitly address product attributes of im-

portance to customers are not puffery."). Because FCA's cases on the subject concern boasts—as

opposed to representations as to specific capabilities—their holdings are clearly inapplicable. *See*

---

*v. Abbott Labs.,* 368 F. Supp. 3d 1152, 1183 (N.D. Ill. 2019) (discussing the learned intermediary
doctrine, scienter, and FDA preemption); *Marcum v. Columbia Gas Trans.*, 423 F.Supp.3d 115,
121 (E.D.Penn. 2019) (discussing the absence of a fiduciary duty).

[5] This argument was similarly raised by FCA and rejected by the Court in the *EcoDiesel* Multi
District Litigation. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab.
Litig.*, 295 F. Supp. 3d 927, 1004-1007 (N.D. Cal. 2018) (overruled on other grounds).

*e.g. Twardzik v. HP Inc.*, 2022 WL 606092, *4-5 (D. Del. 2022) (addressing advertising related to operating speed, such as "unbridled performance" and "exceptionally powerful with incredible speed"); *Johnson v. FCA US LLC*, 555 F.Supp.3d 488, 506-507 (E.D. Mich. 2021) (concerning boasts that the cars were premium and luxury vehicles).

FCA also claims Plaintiffs failed to show that its advertisements were false. However, unlike in *Houston v. Medtronic*, 957 F. Supp. 2d 1166, 1179-80 (C.D. Cal. 2013), Plaintiffs demonstrate the falsity of FCA's statements by identifying FCA's own words: the Defect, which prevents access to electric propulsions systems, will continue as long as the weather remains cold. CAC ¶¶ 88. As a result, the advertised electric functionality is simply untrue. *Id.* at ¶ 70.

### iii. FCA's Presale Knowledge Argument is Unsupported

FCA argues that Plaintiffs failed to plead facts showing FCA's pre-sale knowledge of the Defect. This is incorrect. FCA's knowledge may be alleged generally at the pleading stage. Fed. R. Civ. P. 9(b); *McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470 (KM) (JSA), 2023 WL 6140641, at *5 (D.N.J. Sep. 20, 2023) ("Where, as here, the relevant information is in the defendant's hands, the Court will more readily open the doors of discovery.").

Moreover, Plaintiffs show FCA's knowledge by pointing to a number of indicators, including: the Class Vehicles' Owner's Manual; FCA's alterations to the Owner's Manual; FCA's issuance of technical service bulletins concerning the Defect; FCA's design and pre-sale testing of the Class Vehicles; online forums actively monitored and used by FCA; and FCA's own online posts concerning the Defect. *See* CAC ¶¶ 6, 63, 77, 80, 83, 85, 88, 91, 92, 434.

These allegations are more than sufficient. *Cohen v. Subaru of Am., Inc.*, No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307, at *19, 22 (D.N.J. Mar. 10, 2022) (finding plausible plaintiffs' allegations of knowledge stemming from National Highway Traffic Safety Administration

("NHTSA") complaints that post-dated plaintiffs' purchase; other customer complaints; repairs; warranty claims; and testing); *McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470 (KM) (JSA), 2023 WL 6140641, at *5 (D.N.J. Sep. 20, 2023) (determining that the combination of online posts by consumers and warranty claims by customers creates a plausible inference of pre-sale knowledge); *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2019 WL 1765817,at *6 (N.D. Cal. Apr. 22, 2019) ("Courts have found that allegations that similarly address multiple specific sources of knowledge have raised a plausible inference of the defendant's knowledge.").

Meanwhile, FCA's decisions, both of which only concerned omissions, are inapposite. The *Wozniak* plaintiffs' pre-sale knowledge hinged exclusively upon reviews on third party web-sites and NHTSA complaints. *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019). And the defect in *Gotthelf* only emerged "toward the end of the HID bulb's useful life"—for example both *Gotthelf* plaintiffs first experienced the defect approximately three years after purchase. *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 97-98 (3d Cir. 2013). Pre-sale knowledge is much easier to show here, where the Defect manifested immediately upon exposure to the cold[6] and, as discussed above, numerous indicators combined to show FCA's knowledge of the Defect.

<u>iv. FCA's Duty to Disclose Arguments are Misleading and Unavailing</u>

FCA broadly argues that nearly all[7] of Plaintiffs' so-called "fraud-based" claims are subject to dismissal because Plaintiffs failed to establish a duty to disclose. FCA is wrong. To be clear, while a duty to disclose is generally an element of common law fraud, Plaintiffs need not allege a duty to disclose for every state consumer statutory claim, or even every fraud by

---

[6] *See, e.g.* CAC ¶¶ 214, 224.

[7] FCA concedes that Illinois and Nebraska consumer claims do not require a duty. MTD at 15.

omission claim.[8] For instance, "numerous Oregon courts have found actionable fraud without express reference to a duty to disclose, citing instead circumstances in which a reasonable person would expect full disclosure of facts." *CRM Collateral II, Inc. v. Tri-County Metro. Transp. Dist. of Or.*, No. CV 08-1266-PK, 2009 WL 3054959, at *5 (D. Or. Sep. 18, 2009).

As for the statutory and common law claims that require a duty to disclose, the CAC sufficiently demonstrated that a duty existed here.[9] First, as alleged in the CAC, FCA had superior and exclusive knowledge of the Defect. CAC ¶¶ 6, 49, 50, 111. This creates a duty to disclose in many applicable jurisdictions.[10]

---

[8] The CPA claims that do not require a duty to disclose are those in: **Colorado**: *Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998); **Massachusetts**: *Canfield v. FCA US LLC*, No. 17-1789-MN-SRF, 2019 WL 133402, at *43 (D. Del. Jan. 8, 2019); **New Jersey**: *In re Natera Prenatal Testing Litig.*, --- F. Supp. 3d ---, No. 22-cv-00985-JST, 2023 WL 3370737, at *8 (N.D. Cal. Mar. 28, 2023) (citing *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013)); **Vermont**: *Centrella v. Ritz-Craft Corp. of Pa., Inc.*, No. 2:14-cv-111-jmc, 2018 WL 840038 (D. Vt. Feb. 12, 2018). Meanwhile, the Maryland Consumer Protection Act imposes a statutory duty on a seller to disclose material facts in connection with the promotion or sale of consumer goods. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015).

[9] As made clear above, each applicable states' disclosure duties extend beyond fiduciary relationships. *See* FN 7, 8 *supra*.

[10] **California:** *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1096 (N.D. Cal. 2007); *Ceballos v. FCA US LLC*, No. 8:22-cv-01226-JWH-JDE, 2023 U.S. Dist. LEXIS 112905, at *8 (C.D. Cal. Apr. 24, 2023); **Colorado**: *Murphy v. Toyota Motor Sales United States*, No. 2:20-cv-05892-VAP-ADSx, 2021 WL 2801456, at *5 (C.D. Cal. Apr. 21, 2021); **Georgia**: *Monopoli v. Mercedes-Benz USA, LLC*, Civil Action No. 1:21-cv-01353-SDG, 2022 WL 409484, at *11-12 (N.D. Ga. Feb. 10, 2022); **Iowa**: *Capson Physicians Ins. Co. v. MMIC Ins., Inc.*, 829 F.3d 951, 957-58 (8th Cir. 2016); **Michigan**: *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015); **Minnesota**: *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 291-92 (N.D. Cal. 2017); **Nebraska**: *Benkle v. Ford Motor Co.*, No. SA CV 16-1569-DOC (JCGx), 2017 WL 9486154, at *7 (C.D. Cal. Dec. 22, 2017); **New Hampshire**: *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civil Action No. 16-2765 (JLL), 2017 WL 1902160, at *19 (D.N.J. May 8, 2017); **New York**: *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011); **Ohio**: *Layman v. Binns*, 35 Ohio St. 3d 176, 178, 519 N.E.2d 642, 644 (1988); *Parillo v. Werner Co.*, No. 3:14-cv-369, 2015 U.S. Dist. LEXIS 98361, at *7-8 (S.D. Ohio July 28, 2015); **Oklahoma**: *Massey v. Flowers Foods, Inc.*, No. CIV-16-1233-R, 2017 WL 3639150, at *4 (W.D. Okla. Apr. 21, 2017); **Pennsylvania**: *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *19 (D.N.J. May 8, 2017); **Washington**: *Murphy*, No. 2:20-cv-05892-VAP-ADSx, 2021 WL

Moreover, a partial, inaccurate disclosure creates a duty to disclose in a number of states.[11] Despite FCA's claims to the contrary, Plaintiffs adequately allege that 1) operation of the Class Vehicles in electric only mode is a material fact, and 2) FCA made partial and incomplete disclosures about Class Vehicles by saying that the vehicles were capable of at-will EV driving, while omitting that this was not possible in cold weather or took over two hours of the engine running before it could switch over to electric only. *See* CAC ¶¶ 3-5, 70. Ultimately, the Defect clearly precludes the "fully electric daily commutes" that FCA promoted. *Id.* at ¶ 70.

FCA attacks the partial misrepresentation theory on reliance grounds. For the reasons laid out in section IV.A.ii n. 3, Plaintiffs have sufficiently alleged reliance. Moreover, FCA's argument—that Plaintiffs insufficiently alleged exposure to the fraudulent statements—is not supported by the cases FCA cites.[12]

---

2801456at *6; **Wisconsin**: *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2022 WL 748462, at *4 (N.D. Fla. Mar. 12, 2022).

[11] **Connecticut**: *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 622-23, 894 A.2d 240, 247 (2006); **Illinois**: *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009); **Maryland**: *Hill v. Brush Engineered*, 383 F. Supp.2d 814, 820 (D. Md. 2005); **Massachusetts**: *Hopkinton Friendly Serv. V. Glob. Cos. LLC*, 384 F. Supp. 3d 179, 191 (D. Mass. 2019); **Minnesota**: *Gold*, 323 F.R.D. 291-92; *Sadeghi-A*, 2021 WL 856919, at *12-13; **Montana**: *Crown Parts & Machs., Inc. v. Euro Mach. Tool Co.*, No. CV 17-102-BLG-TJC, 2019 WL 4258873, at *5 (D. Mont. Sep. 9, 2019); **New Hampshire**: *Bergeron v. Dupont*, 116 N.H. 373, 374, 359 A.2d 627, 628 (1976); **New Jersey**: *In re Volkswagen*, 2017 WL 1902160, at *20; **New York**: *Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008); **Oregon**: *CRM Collateral II*, WL 3054959at *5; **Vermont:** *In re Chrysler-Dodge-Jeep EcoDiesel*, 295 F. Supp. 3d at 1011; **Wisconsin**: *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 748462 at *4.

[12] Not only is the identified text in *Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, silent on the matter of exposure and reliance, it excellently supports Plaintiff's position. 717 F. Supp. 2d 156, 162 (D. Mass. 2010) (explaining that superior knowledge and partial representations created a duty to disclose). Likewise, *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, directly contradicts Defendant's position. 2020 WL 639613, *15 (D. Neb. 2020) (denying dismissal even where plaintiffs admitted that they did not read the materials at issue). Next, *Lilliston v. Regions Bank*; *Kwintkiewicz v. Bentley Motors, Inc.*; and *Oro BRC4, LLC v. Silvertree Apts., Inc.* turned on the absence of misleading misrepresentations, rather than whether they were seen by the plaintiffs. 288 Ga. App. 241, 243-44, 653 S.E.2d 306, 309-10 (2007); 2011 WL 1336576, *3

FCA goes on to take the brazen position that it never promised customers that the plug-in hybrid Class Vehicles' electric propulsion would actually be able to operate reliably in cold weather—and, therefore, there was no misrepresentation. MTD at 15-16. This is nonsense. FCA points to statements such as "actual mileage may vary," but these caveats do not render FCA's representations accurate when the actual mileage capacity is zero. Finally, for the reasons laid out in the preceding section, Plaintiffs have sufficiently alleged pre-sale knowledge.

<u>v. FCA's Hodgepodge of State-Specific Arguments are Unavailing</u>

FCA first argues that the economic loss doctrine bars common law fraud claims in a number of states. This argument glosses over a series of contradictory holdings.[13]

---

(D. Md. 2011) ("the Amended Complaint contains no allegations or facts permitting the conclusion that [defendant] . . . made partial representations to Plaintiffs"); 2021 WL 184686, *11 (S.D. Ohio 2021) ("[Plaintiff] does not allege that Defendants disclosed some concessions but not others, nor does it allege that the concessions disclosed were inaccurate"). The same holds true for the analysis identified by Defendant in *McCracken v. R.J. Reynolds Tobacco Co*., 2018 WL 3130402, *5 (E.D. Pa. 2018) (noting that the plaintiff failed to allege that defendant made any affirmative misrepresentations concerning the alleged deceptions). As a result, those cases are grossly inapplicable. Next, *Studio 1220, Inc. v. Bank of America Corp*. is simply silent on the issue of reliance or exposure to partial representations. No. 21-16066, 2022 U.S. App. LEXIS 13896, at *3 (9th Cir. May 23, 2022). In *Kitchen Winners NY Inc. v. Rock Fintek LLC*, the Rule 9(b) analysis turned on the specificity of the misrepresentation allegations rather than whether plaintiff was exposed to the misrepresentation. 2023 U.S. Dist. LEXIS 57032, at *48-50 (S.D.N.Y. 2023). Meanwhile, *Carufel v. Minnesota Dep't of Pub. Safety*, discussed a duty to disclose based exclusively on "special knowledge," rather than partial affirmative misrepresentations—therefore it provides no applicable analysis concerning exposure to or reliance on misleading partial representations. 2018 WL 6596287, *10 (Minn. App. 2018). Next, the analysis pointed to in *NovaFund Advisors, LLC v. Capitala Grp., LLC* turned on the absence of false representations, rather than exposure to a particular statement. 2022 WL 624524, *21 (D. Conn. 2022). Finally, *Lang v. Tharpe* involved extremely ambiguous pleadings inapplicable to the present case. 2022 WL 1597421, *12 (E.D. Wis. 2022) ("The plaintiffs plead only that this representation 'allegedly' occurred rather than alleging that it did, in fact, occur").

[13] *See, e.g., Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1021 (N.D. Cal. 2020) (applying California law and holding that "[a] fraudulent omission, no less than an affirmative misrepresentation, falls into several categories to which the court held the [economic loss] rule should generally not apply[.]"); *Giles v. Gen. Motors Acceptance Corp*., 494 F.3d 865, 875 (9th Cir. 2007) (declining to apply the economic loss rule to fraud claims under Colorado law); *In re FCA US*

FCA next contends that the Georgia UDTPA does not allow for monetary relief. This is false. FCA continues to actively conceal the Defect by representing that it does not exist. *See* CAC ¶ 585. Plaintiffs also allege damages from having "paid for diagnoses, repairs, and replacements, paid for fuel they otherwise would not have..." *See id.* ¶ 593. This is enough to maintain a claim under Georgia law for injunctive relief.[4] *See Amin v. Mercedes-Benz USA, LLC,* 301 F. Supp. 3d 1277, 1294-95 (N.D. Ga. 2018); *Davis v. BMW of NA, LLC,* 2022 WL 3646571, at *6 (D.N.J. Aug. 23, 2022). Therefore, because the injunctive relief claim can be maintained, so can the claim for damages. *See Schramm v. Exactech, Inc.,* 2:17-CV-200-RWS, 2018 WL 11448995, at *4 (N.D. Ga. Feb. 20, 2018) ("Plaintiff seeks costs, attorneys' fees, and punitive damages. Such relief, however, is contingent on a successful injunction claim…").

FCA goes on to argue, without citing to statutory authority, that the Michigan CPA does not allow for automobile claims. MTD at 17-18. However, "the MCPA specifically places the burden on proving an exemption from the MCPA on the person claiming the exemption." *Giura v. Bartolomeo,* No. 291952, 2010 WL 3767563, at *2 (Mich. Ct. App. Sept. 28, 2010). "An analysis of whether claims are barred by the exemption requires the identification and careful consideration of the specific statute that purports to authorize the transaction at issue." *In re GM Air*

---

*LLC Monostable Electronic Gearshift Litig.,* 335 F. Supp. 3d, 582, 590-91(E.D. Mich. 2018) (finding that Maryland's economic loss doctrine does not apply because a risk of personal injury was alleged by Plaintiffs); *In re Volkswagen Timing Chain Prod. Liab. Litig.,* Civil Action No. 16-2765 (JLL), 2017 WL 1902160, at *18 (D.N.J. May 8, 2017) (finding that, in an automobile defect case, the economic loss doctrine does not bar claims under Michigan and Ohio law); *Weisblum v. Prophase Labs, Inc.,* 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (holding that the economic loss doctrine does not bar claims for fraud under New York law); *Manhattan Constr. Co. v. McArthur Elec., Inc.,* No. 1:06-cv-1512-WSD, 2008 WL 11333433, at *5 (N.D. Ga. Jul. 7, 2008) (explaining the "misrepresentation exception" to the economic loss rule under Georgia law); *Callery v. Hop Energy, LLC,* No. 20-3652, 2023 WL 2601178, at *5 (E.D. Pa. Mar. 22, 2023) (declining to apply the economic loss rule to Pennsylvania fraud claims where there were allegations of misleading marketing).

*Conditioning Litig.,* 406 F. Supp. 3d 618, 642-43 (E.D. Mich. 2019). Moreover, FCA's argument is belied by recent decisions. *Flynn v. FCA US LLC*, 327 F.R.D. 206, 219 (S.D. Ill. 2018) (denying summary judgment dismissal on plaintiff's omission-based MCPA claim). Accordingly, FCA has failed to meet its burden, precluding dismissal. *See*, *e.g., Opheim v. Volkswagen Aktiengesellschaft,* No. 20-02483 (KM) (ESK), 2021 WL 2621689, at *16 (D.N.J. June 25, 2021) ("But VW America has not pointed to any laws that 'specifically' 'authorized' its conduct…Absent a more specific argument, VW America's invocation of the exemption fails.").

Next, the relevant accrual date for the statute of limitations under the Oregon UTPA is when Plaintiff knew of or had reason to know of his or her claim. *See Rubin v. Oregon*, No. 3:19-cv-01377-IM, 2022 WL 2713904, at *2 (D. Or. July 13, 2022). Plaintiffs alleged they did not discover, and could not have discovered, the Defect until recently before the commencement of this action, tolling the statute of limitations by the discovery rule. CAC ¶¶ 48-50.

Next, FCA mischaracterizes Plaintiffs' Wisconsin DTPA claim. Count XXIX alleges that FCA engaged in misleading affirmative representations and therefore violated Wis. Stat. § 100.18(1). CAC ¶ 721 (noting that the FCA "advertis[ed] the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine").

Plaintiffs concede that the Colorado CPA precludes monetary damages and treble damages in class actions. *See Friedman v. Dollar Thrifty Auto. Grp., Inc*., No. 12-cv-02432-WYD-KMT, 2015 WL 4036319, at *3 (D. Colo. July 1, 2015). However, the Colorado CPA does not bar an award of injunctive relief on a class-wide basis. *See id.* at *6 ("Plaintiffs' Revised Motion for Class Certification appears to rely solely on monetary relief under Fed. R. Civ. P. 23(b)(3) as a basis for certification. It does not cite to or rely on Rule 23(b)(2), which provides for

15

certification where injunctive or declaratory relief is appropriate respecting the class as a whole."). Plaintiffs properly seek injunctive relief under the Colorado CPA. CAC ¶ 691.

Lack of notice under the CLRA, or notice provided fewer than 30 days before the filing of the action for damages, is not fatal to Plaintiffs' claim. "Where a plaintiff fails to provide such notice, the damages claim must simply be dismissed until 30 days or more after the plaintiff complies." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021) (quoting *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 362 (9th Cir. 2016)). As it has been well over 30 days since Plaintiffs provided FCA with CLRA notice, Plaintiffs' claim for damages under the CLRA is proper. Plaintiffs' UCL claim does not require pre-suit notice.[14]

### B. Equitable Claims

#### i. Plaintiffs' Equitable Claims Are Well-Pled

As an initial point, FCA argues that Plaintiffs' claims for equitable and injunctive relief fail as Plaintiffs have not plead facts that indicate there is no adequate remedy at law. Not so. As alleged in the CAC, FCA has failed to provide a remedy that fixes the Defect. *See e.g.*, CAC ¶¶ 81, 97, 117, 128, 139, 154-158, 168, 169, 177, 185, 193-195, 204-206, 342-345, and 365-368.

Moreover, FCA argues that Plaintiffs' Equitable claim on behalf of a Maryland Subclass and Unjust Enrichment claim should be dismissed. Not so. As laid out in section IV.A.ii, Plaintiffs' allegations are pled with all requisite specificity. FCA contends that Plaintiffs cannot plead a claim for unjust enrichment without demonstrating that all legal remedies are inadequate. MTD at 27. In so doing, FCA relies on *Guzman v. Polaris Indus.,* which was decided at the summary judgment stage, and *Genentech, Inc. v. Amgen Inc.*, which was weighing a request for

---

[14] The case cited by Defendant, *Milman v. FCA U.S., LLC*, does not suggest that the UCL has a pre-suit notice requirement. 2018 WL 5867481, *14 (C.D. Cal. 2018).

preliminary injunctions. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1310 (9th Cir. 2022); *Genentech, Inc. v. Amgen Inc.*, No. 18-924-CFC, 2019 WL 3290167, at *3 (D. Del. July 18, 2019). "District courts regularly deny dismissal of unjust enrichment claims on the ground that there is no allegation of a lack of adequate remedies at law." *Pierre v. Healthy Bev., LLC*, No. 20-4934, 2022 WL 596097, at *14 (E.D. Pa. Feb. 28, 2022) (declining to dismiss unjust enrichment claims pled in the alternative to an express warranty claim); *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 275 (W.D. Pa. 2021) ("[A]s there are sometime inadequacies in contractual remedies at law, it is widely accepted practice to pursue unjust enrichment in the alternative at the pleading stage.").

## ii.   Plaintiffs' Implied Warranty Claims Survive

"Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Cohen v. Subaru of America, Inc.*, No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307, at *11 (D. NJ. Mar. 10, 2022). "[C]ourts reject the notion that a vehicle is fit for its ordinary purpose 'merely because [it] provides transportation from point A to point B[.]'" *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 946 (N.D. Cal. 2018) (alterations in original). Indeed, "courts have recognized that vehicles may be unmerchantable even if they can be used to provide basic transportation when a defect presents symptoms in a persistent manner that can be said to impair safety, reliability, or operability over an extended period of time." *Id.* at 947. Moreover, courts evaluating merchantability also assess whether a vehicle is fit for the ordinary purposes advertised by the manufacturer. *See, e.g.*, *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV-MORENO, 2018 WL 3405245, at *9 (S.D. Fla. July 12, 2018) (in evaluating a breach of implied warranty of merchantability claim relating to cars advertised as suitable for use on a racetrack, holding that "the

question is whether this class of vehicles was fit for the ordinary purpose of using them on a racetrack as advertised by Ford."). Thus, the question is: are the "plug-in hybrid" Class Vehicles fit for the ordinary purpose of electric-only driving, as advertised by FCA.

The gravamen of Plaintiffs' complaint is that, contrary to the implied warranties, the vehicles did not provide "reliable electric powered transportation," CAC ¶¶ 445, 451, and are therefore not fit for the ordinary purpose of driving in electric-only mode. The fact that FCA sells the same models without the electric propulsion system at a substantially lower price point further illustrates that the electric-only driving mode is among the "ordinary uses" of the Class Vehicles, and Plaintiffs allege that had they had known of the Defect, they would not have purchased the Class Vehicles, or would have paid considerably less for them. CAC ¶ 5. FCA, though, asserts that the Class Vehicles are merchantable as a matter of law because Plaintiffs fail to allege that the Class Vehicles are unsafe or unable to provide reliable transportation. Even if that were the test (which it is not), the Class Vehicles fail it. Plaintiffs allege that due to the Defect, Plaintiffs have "little to no access to electric-only or electric-assisted operation for months on end." CAC ¶ 78. The Defect therefore impairs the reliability and operability of Plaintiffs' vehicles, as one of the primary driving modes and ordinary uses—for which Plaintiffs paid a premium—is frequently inoperable. Numerous Plaintiffs additionally allege that the Defect manifests in diminished acceleration capacity—because the electric motor is unavailable to provide torque—impairing drivers' abilities to safely merge and drive on highways. *See* CAC ¶¶ 129, 141, 159, 170, 186, 197, 207, 215, 221, 228, 235, 241, 266, 272, 279, and 369. Plaintiffs therefore also allege that the Defect renders their vehicles unsafe at those times.

"Whether a defect is so severe that the cars at issue could not be said to provide safe, reliable transportation is a question of fact for the jury." *Diaz v. FCA US LLC*, No. 21-cv-00906-

18

EJW, 2023 WL 6160560, at *11 (D. Del. Sept. 21, 2023). At the pleading stage, Plaintiffs' allegations are sufficient to state a claim for breach of the implied warranty of merchantability. A jury could plausibly conclude that the Defect impaired the Class Vehicles' operability, reliability, and safety, such that the vehicles were unmerchantable.

Plaintiffs allege that FCA was put on notice of the implied breach of merchantability through consumer complaints, product testing, and communications from dealerships. CAC ¶ 454. "[T]he question of adequacy and timeliness of notice becomes one of fact, and the claim should not be defeated at motion to dismiss stage." *Chapman v. General Motors LLC*, 531 F. Supp. 3d 1257, 1279 (E.D. Mich. Mar. 31, 2021).

FCA's argument that Plaintiffs Thompson and Figley failed to provide the required notice under Georgia and Pennsylvania law fails for the same reasons. As FCA concedes, Plaintiffs Thompson and Figley sent pre-suit notice letters in advance of joining this litigation. Whether these letters were timely and sufficient is a question of fact reserved for summary judgment or trial. *See In re Shop-Vac Marketing and Sales Practices Litig.*, NO. 4:12-md-2380, 2014 WL 3557189, at *7 (M.D. Pa. July 17, 2014) ("Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact"); *Dermatology Specialists of Augusta, Inc. v. Daikin Applied Americas Inc.*, No. CV 116-058, 2019 WL 97831, at *3 (S.D. Ga. Jan. 3, 2019) ("The issue of whether notice was reasonably given and sufficient to provide the defendant with an opportunity to cure, however, is generally reserved for summary judgment or trial.").[15]

---

[15] FCA's reliance on *Terrill v. Electrolux Home Prods., Inc.*, is especially puzzling as the court in that case notes that a claim for breach of implied warranty "may only be dismissed for failure to provide timely notice if the defendant shows that it was prejudiced by the delay" and further notes that "[i]t is unlikely that a defendant could ever show prejudice at the motion to dismiss stage." 753 F. Supp. 2d 1272, 1287 fn. 8 (S.D. Ga. 2010).

FCA argues that Plaintiff Thompson's claim for implied warranty should be dismissed because Plaintiff Thompson lacks privity as required by Georgia law. "Privity 'is unsuitable for adjudication on a Rule 12(b)(6) motion' due to the injury's fact-intensive nature." *McMahon v. Volkswagen Aktiengesellschaft*, 2023 WL 4045156, at *14 (D. N.J. June 16, 2023).

Plaintiff's claim survives for the additional reason that Georgia law recognizes "a consumer who purchases a vehicle from a manufacturer's authorized dealer to be in privity with the manufacturer." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 980 (E.D. Mich. Sept. 30, 2022); *see also Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 652 (E.D. Mich. June 30, 2021) (concluding that because Plaintiff "purchased her second-hand vehicle directly from a dealership as opposed to an original purchaser . . . [Plaintiff] is in privity with Defendant and her implied warranty claim will not be dismissed on this basis."); *Sulligan v. Ford Motor Co.*, No. 22-11668, 2023 WL 5180330, at *9 (E.D. Mich. Aug. 11, 2023) (concluding that because plaintiff purchased the vehicle from an authorized dealership, plaintiff was in privity with defendant). As alleged in the complaint, Plaintiff Thompson purchased his vehicle from Troncalli Chrysler Dodge Jeep Ram, an authorized Jeep dealer. CAC ¶ 163. This is a sufficient allegation of privity to survive a motion to dismiss.

### iii.   Plaintiffs' Magnuson-Moss Warranty Act Claims

FCA asserts that Plaintiffs fail to satisfy the MMWA's jurisdictional requirement of having at least 100 named plaintiffs. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182 (3d Cir. 2023). Plaintiffs concede that the complaint names fewer than 100 plaintiffs. Where a complaint fails to meet the jurisdictional requirement under the MMWA, leave to amend shall be granted so a plaintiff can amend the complaint to include 100 named plaintiffs to support an MMWA claim. *See Diaz v. FCA US LLC*, No. 21-cv-00906-EJW, 2023 WL 6160560, at *14 (D.

Del. Sept. 21, 2023). Plaintiffs' MMWA claim, therefore, should be dismissed without prejudice and Plaintiffs should be granted leave to amend.

iv.    Plaintiffs' Breach of Express Warranty Claims Are Well-Plead

Despite selling defective vehicles, promoting them with inaccurate claims, and failing to provide adequate repairs, FCA argues that it is somehow immune from the express warranty claims brought by Plaintiffs. FCA is wrong.

FCA begins by falsely claiming that Plaintiffs pled no facts regarding FCA's express promises made. MTD at 33. Yet, the CAC properly alleges that FCA's Owner Manual was provided with every Class Vehicle and contained affirmations of fact or promises made by FCA to Class Members relating to performance of the Class Vehicles which became part of the basis of the bargain. CAC, ¶ 467. Specifically, the Owner Manual provides that: "the engine may run for a period of up to 20 minutes when fully warm whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips." CAC, ¶ 467, *see also* Section IV.A.ii.[16] As detailed in the CAC, the Class Vehicles do not conform to these affirmations or promises because they are stuck in FORM for days or weeks at a time. It is well settled that such affirmations become part of the basis of the bargain and can create an express warranty. *See*, *e.g.*, *Francis E. Parker Mem'l Home, Inc. v. Ga.-Pacific LLC*, 945 F. Supp. 2d 543, 566-70 (D.N.J. 2013) (upholding breach of express warranty claim based on affirmations that became part of basis of the bargain). Indeed, even *Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *6-7 (E.D. Mich. Mar. 24, 2021), relied upon by FCA, recognizes this. In *Flores*, unlike here, the

---

[16] Defendant represented that the Class Vehicles' powertrain would allow it to operate solely in electric mode in all conditions for at least 21 miles. CAC ¶¶2, 55-56, 62.

express warranty claim was *only* based on statements made in advertising or marketing materials, and not also the written warranty booklets. *Id. Webb v. Volvo Cars of N.A., LLC*, No. 13-2394, 2018 WL 1470470, at *7 (E.D. Pa. Mar. 26, 2018), cited by FCA, is also distinguishably because, unlike here, the plaintiffs did not allege affirmations in the warranty booklet became part of the basis of the bargain and that created an express warranty. Rather the *Webb* plaintiff failed to "allege a single actual representation made by Volvo that she justifiably relied upon." *Id.*

Next, FCA argues that Plaintiffs have exclusively alleged a design defect that is not covered by the Basic Limited Warranty's application to "defects in material, workmanship, or factory preparation." MTD at 33. This mischaracterization ignores Plaintiffs' contention that the Defect is not one solely of design. The CAC clearly alleges that the Defect is caused, at least in part, by a defect in material, workmanship, and/or design. CAC, ¶¶ 3, 450.[17]

"Courts within this district have refused to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017); *Hickman v. Subaru of Am., Inc.*, No. 1:21-cv-02100-NLH-AMD, 2022 WL 11021043, at *6 (D.N.J. Oct. 19, 2022) (collecting authority and finding that it would be premature to dismiss an express warranty claim on the ground that it only alleged design defects at the motion to dismiss stage); *Shaaya v. Jaguar Land Rover N. Am. LLC*, Civil Action No. 2:20-cv-5679, 2022 WL 2341599, at *9 (D.N.J. June 29, 2022) ("whether a defect is really a design or manufacturing defect is a factual

---

[17] Plaintiffs also allege that "Defendant knew of such defect: (1) at the time of manufacture, when it created the hybrid system in a manner unable to provide for consistent electric-only or electric-assisted power operation," *id*. at ¶ 433; that "FCA knowingly sold a defective product without informing consumers about the manufacturing and/or material defect." *Id.* at ¶ 476.

question that is best resolved after the parties have an opportunity to conduct discovery.).[18] This approach is prudent where, as here, there are issues of fact. *See, Persad v. Ford Motor Co*., No. 17-12599, 2018 WL 3428690, at *5 (E.D. Mich. July 16, 2018) (holding that, where there are issues of fact to explore, courts "have rejected efforts to create an artificial distinction between design and materials/workmanship defects.").[19] Discovery on the manufacturing process, materials, design, and any investigations by FCA will clarify the nature of the Defect.[20]

Additionally, the fact that the Defect exists in all the Class Vehicles does not necessitate a conclusion that it must be a design defect. *Wesley v. Samsung Electronics America, Inc.*, 20-18629, 2022 WL 16509541, at *16 n.10 (D.N.J. Oct. 28, 2022) ("at the motion to dismiss stage, courts have found that "'asserting that the defect in question affects all of the Class [products] produced by [the defendant] does not, own its own, necessarily preclude an allegation of a manufacturing defect.'") (quoting in part *Riley v. Gen Motors, LLC*, No. 21-0924, 2022 WL 787871, at *8 (S.D. Ohio Mar. 15, 2022)); *see also Milisits v. FCA US LLC*, 20-cv-11578, 2021 WL 3145704, at *4 (E.D. Mich. July 26, 2021) (same); *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 548 (D. Conn. 2020) (rejecting defendant's inference that allegations that "all class

---

[18] *See also Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (Hayden, J.) ("[W]here the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the [ ] claim pre-discovery should not control whether the complaint survives.").

[19] *See also Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013) (same); *Francis v. General Motors, LLC*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020) (because plaintiffs alleged the defect "could be due either to poor design, or to poor materials and workmanship," development of the record is necessary and the claims should not be dismissed).

[20] FCA cites to *Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019), but that case does not support dismissal before discovery. *Wesley*, 2022 WL 16509541, at *6 n.10 (noting that the summary judgment decision *Coba* was not applicable at the motion to dismiss stage). Indeed, when the defendant in *Coba* raised these same arguments at the pleading stage, the court properly rejected them, ruling that "it is unclear whether the Fuel Tank Defect is a design defect or a defect in materials or workmanship, and the Court need not resolve the issue at the pleading stage." *Coba v. Ford Motor Co*., 12–1622 (DRD), 2013 WL 244687, at *7 (D.N.J. Jan. 22, 2013).

vehicles" suffered from the defect necessarily meant that design defect had been alleged, because doing so "would be to invert the motion to dismiss standard").[21] Plaintiffs' allegations are "similar to those in *Milistis v. FCA US LLC* and *Francis v. Gen. Motors, LLC*, in which the district courts held that the plaintiffs plausibly alleged *either* a design defect *or* a manufacturing defect." *Pistorio v. FCA US LLC*, No. 20-cv-11838, 2022 WL 141524, at *7 (E.D. Mich. Jan. 14, 2022) ("Because the facts alleged here could be consistent with a defect in manufacturing or materials, Plaintiffs are not required to commit to a single theory of the origin of the [] Defect at this early stage.'").

FCA next attempts to use its inadequate customer service, and refusal or failure to properly diagnose the Defect, as a shield against liability. Plaintiffs allege they visited or communicated with authorized FCA dealerships multiple times seeking warranty repair of their defective hybrid systems. CAC ¶¶ 114, 117, 128, 137-139, 149-158, 168, 169, 177, 185, 193-195, 204-206, 226, 233, 342-344, 367, 368. FCA contends no dealership diagnosed the Class Vehicles as being defective, or that "any dealership ever refused to repair a verified 'defect.'" MTD at 35. FCA misconstrues the facts alleged in the CAC. Plaintiffs allege that their hybrid systems continued to malfunction because the FCA dealerships refused repairs, and/or that the dealership performed ineffective repairs. CAC ¶¶ 114, 117, 128, 137-139, 149-158, 168, 169, 177, 185, 193-195, 204-206, 226, 233, 342-344, 367, 368.[22] As FCA notes, written warranties are created in contemplation "that repairs would need to be made." MTD at 35 (quoting *Kahn v. FCA US LLC*,

---

[21] While Defendant cites to the contrary position taken in *Diaz*, that decision's express warranty analysis relied exclusively on non-binding, out-of-circuit decisions. *Diaz v. FCA US LLC*, Civil Action No. 21-cv-00906-EJW, 2022 WL 4016744, at *34-35 (D. Del. Sep. 2, 2022).

[22] As FCA notes in their citation to *Kahn v. FCA*, written warranties are created in contemplation "that repairs would need to be made." Yet FCA did not do so. Defendant's inability or unwillingness to then provide crucial repairs violated their warranties.

2019 WL 3955386, *7 (C.D. Cal. 2019).[23] Yet FCA categorically failed to do so. FCA's inability or unwillingness to provide effective repairs violated their warranties.

 "There is nothing…in the language of [FCA's] warranty itself[] that conditions Defendant's warranty obligations upon proper diagnosis of the vehicle's problems." *Razen v. FCA US LLC*, 2019 WL 7482214, at *5 (M.D. Fla. Oct. 23, 2019) (denying FCA's motion to dismiss). The "[w]arranty would be rendered meaningless if service agents could avoid triggering the warranty obligations by refusing to properly diagnose or adequately repair the vehicle." *Id.*; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., 754 F. Supp. 2d 1145, 1178 (C.D. Cal. 2010) (Toyota's failure to repair defects constitutes breach of express warranty); *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc*., 2012 WL 2861160, at *6 (S.D. Cal. Feb. 13, 2012) (plaintiffs stated express warranty claim where they sought "effective remedies" but received defective replacement products).

Finally, as detailed in section IV.A.v *supra,* Plaintiffs' pursuit notices were sufficient and any arguments to the contrary do not defeat their claims. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 155 F. Supp. 2d at 1109-1110. Plaintiffs therefore adequately pled an express warranty claim.

### C.  Plaintiffs' UCL Claims Are Well-Plead

FCA's challenge to Plaintiffs' UCL claim is largely repetitive of its previous arguments. As an initial matter, Plaintiffs have adequately pleaded an actionable violation of the "fraudulent" prong of the UCL. California courts have held that "'a claim may be stated' under the. . . UCL . . . 'in terms constituting fraudulent omissions' so long as the omission is 'contrary to a

---

[23] *Kahn* is factually distinguishable because, there, the defect manifested more than *four* years after the sale of the vehicles —after the warranty had expired. *Kahn*, 2019 WL 3955386, at *7.

representation actually made by the defendant' or the omission is 'of a fact the defendant was obliged to disclose.'" *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101 (N.D. Cal. 2021) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006)). Moreover, the "unfairness" prong is satisfied where a defendant's conduct "violates established public policy or if it is … unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Each Plaintiff's vehicle contains the Defect, which causes it to lock into FORM and not be able to use the electric or hybrid modes (*e.g.*, CAC ¶¶ 3, 78, 83-87), FCA had knowledge of the Defect (*see supra* § IV.A.iii) yet omitted this fact and still does not offer an adequate remedy. *See, e.g.,* CAC ¶¶ 81, 97, 117, 128, 139, 154-158, 168, 365-368. In addition, Plaintiffs allege that the Defect presents a safety issue, in the form of compromised acceleration. *See, e.g.,* CAC ¶¶ 129, 141, 159, 170, 178, 186, 197, 207, 266, 272, 279, 369. Given the seriousness of the Defect, and its attendant safety risk, there are no factors that excuse FCA's omissions. Thus, FCA's conduct is "unfair." *See Becerra v. GM LLC*, 241 F. Supp. 3d 1094, 1112 (S.D. Cal. 2017); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1175-76 (C.D. Cal. 2010) ("the manufacture and sale of vehicles with a [acceleration defect], and defendants' failure to adequately investigate, disclose, and remedy" violates the UCL).

With respect to the "unlawful" prong of the UCL, "anything that can properly be called a business practice and that at the same time is forbidden by law" is independently actionable under the UCL. *Becerra*, 241 F. Supp. 3d at 1111. Plaintiffs allege that FCA's sale of the affected vehicles violated numerous state CPAs, including the CLRA, and breached implied warranties, each of which is "unlawful" under the UCL. *McCarthy v. Toyota Motor Corp.*, No. 8:18-cv-00201-JLS-KES, 2019 WL 3220579, at *7 (C.D. Cal. Apr. 9, 2019).

26

Finally, Plaintiffs are permitted to plead remedies in the alternative. *See, e.g., Luong v. Subaru of Am., Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018). FCA points to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) to support its contention that Plaintiffs' UCL claim must be dismissed because they do not lack an adequate remedy at law; however, *Sonner* does not foreclose Plaintiffs from seeking injunctive relief where damages are also available. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages."). Because Plaintiffs seek injunctive relief under the UCL, CAC ¶¶ 67-71, their UCL claim should survive the Motion.

### D. Plaintiffs Berner, Koss, and Kornblum's Consumer Protection Act Claims Should Not Be Dismissed

FCA argues that Plaintiff Berner, Koss, and Kornblum's claims under the Nebraska, Vermont, and Washington Consumer Protection Acts ("NCPA," "VCPA," and "WCPA," respectively) should be dismissed because these statutes "do not have force or operation outside of their respective boundaries." MTD at 38-39. The cases upon which FCA relies in support of this argument, however, are readily distinguishable.

*Nebraska.* In *Chavez v. Wal-Mart Stores, Inc.*, 2014 WL 12591252, at *3 (C.D. Cal. June 2, 2014), the sole plaintiff—a California resident—brought suit against Wal-Mart for its sale of inflatable pools that used deceptive images on their product packaging. *See id.* In addition to California claims, the plaintiff asserted claims under twenty-five other states' consumer protection laws, including the NCPA. *See id.* While the court found that "[s]everal of the states' consumer protection statutes cannot be applied extraterritorially," the court also noted that "[t]hese states confer statutory standing only to residents, those who are injured within the state, and/or those who suffer injuries that are otherwise closely connected to the state." *Id.* at *3. The Court

ultimately found that the California plaintiff lacked statutory standing to bring a claim under the NCPA because she did "not allege that her purchase ha[d] any connection to any state other than California," and she did "not dispute that she [could not] satisfy the[] statute['s] requirements." *Id.* Here, in contrast, Plaintiff Berner is a citizen and resident of Nebraska, and she is personally asserting a claim under the NCPA. *See* CAC at ¶¶ 293, 725. The NCPA does not preclude claims when goods are purchased outside of Nebraska, but rather provides that "[a]ny person who is injured . . . , whether such injured person dealt directly or indirectly with the defendant . . . may bring a civil action . . . to recover the actual damages sustained by him or her." Neb. Rev. Stat. § 59-1609. FCA has failed to cite any persuasive authority to the contrary.

<u>Vermont.</u> In *Track, Inc. v. ASH N. Am., Inc.*, 2023 WL 2733679, at *6 (W.D. Wis. Mar. 31, 2023), the court did not discuss or evaluate claims brought under the VCPA, let alone decide its extraterritorial effect. *See id.* at 5-6 (discussing the Vermont dealership statute Vt. Stat. 9, § 4072). Courts in Vermont have upheld VCPA claims when the conduct giving rise to the claim occurred outside of Vermont. For example, in *MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co., Inc.*, 383 F. Supp. 3d 307, 309 (D. Vt. 2019), the court held that "the VCPA is intended to address fraudulent conduct affecting Vermont residents." *See id.* at 313. The court reasoned that because the "plaintiff is located in Vermont and alleges that actions by defendant taken outside of the state have damaged it here," the plaintiff's "allegations of a Vermont nexus are sufficient to defeat a motion to dismiss." Similarly, here, Plaintiff Koss is a citizen and resident of Vermont and has been damaged by FCA. *See* CAC ¶¶ 33, 311.

<u>Washington</u>. FCA also asks this Court to adopt a narrow interpretation of the WCPA. *See* MTD at 38-39. Yet, such an interpretation is unsupported by any authority cited by FCA. While the court in *Central Flyway Air, Inc. v. Grey Ghost Int'l, LLC*, 2022 WL 4534402, at *9 (W.D.

Wash. Sept. 28, 2022) recognized that courts have found that "Washington's laws do not apply extraterritorially," it explicitly stated that this is true "where the relevant parties, and the acts giving rise to the claim, were located outside of Washington." *See id.* The *Central Flyway* court questioned whether the Washington law at issue—Washington's Uniform Trade Secrets Act—applied, "[g]iven the lack of evidence that these *parties or their conduct were located in Washington*." (emphasis added). Here, unlike the parties in *Central Flyway*, Plaintiff Kornblum is a citizen and resident of Washington. CAC ¶¶ 42, 347. Further, unlike in *Central Flyway* where there was no claim that the conduct at issue took place in Washington, Plaintiff Kornblum was in Washington when he purchased his Class Vehicle. In fact, he never visited the dealership in Indiana; all his communications with the dealership took place via email, phone, and mail; his execution of the purchase and financing paperwork took place in Washington; and he "had his Class Vehicle shipped from the Jeep dealership in Indiana to his home in Washington State." *See* CAC ¶ 348. Accordingly, the concerns raised by the court in *Central Flyway* are not present here.

Moreover, the Supreme Court of Washington has found that "[t]he statutory provisions of the [W]CPA are broadly worded"; that the legislature directed that the WCPA be "liberally construed"; that "[t]he language of the CPA evinces a broad, rather than narrow, lens" through which the statute should be interpreted; and that "[a] broad reading of the CPA is also consistent with our established recognition that the CPA's reach extends beyond Washington's boundaries." *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 590-92 (Wash. 2015).

### E.  Plaintiffs Have Standing to Assert Nationwide Class Allegations

Plaintiffs properly plead a nationwide class. Moreover, Plaintiffs have standing to assert claims on behalf of putative class members from other states, regardless of whether claims are pled under those states' laws, and this is a question better reserved for the class certification

stage. In the Third Circuit, "the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) (internal citations omitted). Therefore, FCA's reliance on *Diaz v. FCA US LLC*, 2022 WL 4016744, at *17-19 (D. Del. Sept. 2, 2022) is misplaced.

FCA ignores the differing opinions within this District—some of which post-date *Diaz*—concerning the question of Article III standing and its application to unnamed putative class members. *See Neale*, 794 F.3d 353, 364 (3d Cir. 2015). In *Maugain v. FCA US LLC*, 2023 WL 1796113, at *4-5 (D. Del. Feb. 7, 2023), a case involving similar legal claims against FCA, Judge Williams recognized the split in the District, but reasoned that *Neale* is not inflexible and that courts' analysis of raising claims under other states' laws goes to a question for class certification not a motion to dismiss. *See Maugain*, at *4-5 (quoting *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022)) ("Any problem with raising claims under several states' laws goes to the propriety of class certification, not standing.").

## V.    LEAVE TO AMEND

When granting dismissal, courts should freely grant leave to amend unless doing so would be futile or cause undue prejudice. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 144 n. 10 (3d Cir. 2009). Neither applies here because this action is in its nascent stages. Accordingly, Plaintiffs respectfully request leave to amend perceived factual deficiencies—if any—that the Court identifies.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's MTD.

Dated: March 20, 2024

                    */s/ P. Bradford deLeeuw*
                    P. Bradford deLeeuw (#3569)
                    **DELEEUW LAW LLC**
                    1301 Walnut Green Road
                    Wilmington, DE 19807
                    (302) 274-2180
                    (302) 351-6905 (fax)
                    brad@deleeuwlaw.com

                    ***Interim Liaison Counsel***

                    Dan E. Gustafson (*pro hac vice* forthcoming)
                    David A. Goodwin (*pro hac vice*)
                    **GUSTAFSON GLUEK PLLC**

                    Canadian Pacific Plaza
                    120 South Sixth Street, Suite 2600
                    Minneapolis, MN 55402
                    Telephone: (612) 333-8844
                    dgustafson@gustafsongluek.com
                    dgoodwin@gustafsongluek.com

                    Nicholas A. Migliaccio (*pro hac vice*)
                    Jason S. Rathod (*pro hac vice*)
                    Mark D. Patronella (*pro hac vice*)
                    **MIGLIACCIO & RATHOD LLP**
                    412 H Street NE
                    Washington, DC 20002
                    Tel: (202) 470-3520
                    nmigliaccio@classlawdc.com
                    jrathod@classlawdc.com
                    mpatronella@classlawdc.com

                    Scott David Hirsch (*pro hac vice*)
                    **SCOTT HIRSCH LAW GROUP PLLC**
                    Fla. Bar No. 50833
                    6810 N. State Road 7
                    Coconut Creek, FL 33073
                    Tel: (561) 569-7062
                    scott@scotthirschlawgroup.com

                    ***Interim Class Counsel***

Gretchen Freeman Cappio (pro hac vice)
Ryan McDevitt (pro hac vice)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900
Fax (206) 623-3384
gcappio@kellerrohrback.com rmcdevitt@kel-lerrohrback.com


E. Powell Miller (pro hac vice)
Sharon S. Almonrode (pro hac vice)
Dennis A. Lienhardt
**THE MILLER LAW FIRM, P.C.**
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

***Plaintiffs' Counsel***