## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JESSE CROWELL, *et al.*, on behalf of themselves and all others similarly situated,   )
  )
  )
            Plaintiffs,   )
  )
            v.   )     Civil Action No. 23-13-MN
  )
FCA US LLC,   )
  )
            Defendant.   )

## <u>REPORT AND RECOMMENDATION</u>

Presently before the court in this putative consumer class action is a motion to dismiss the consolidated amended class action complaint ("CAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant FCA US LLC ("Defendant").[1] (D.I. 52) For the following reasons, I recommend that the court GRANT-IN-PART the motion to dismiss.

## I. BACKGROUND

Plaintiffs are individuals who purchased or leased a 2021-2023 model year Jeep Wrangler 4xe or a 2022-2023 model year Jeep Grand Cherokee 4xe plug-in hybrid vehicle (the "Class Vehicles") designed and manufactured by Defendant. (D.I. 49 at ¶¶ 1, 12-44) The CAC alleges that the Class Vehicles have a defective "Fuel and Oil Refresh Mode" ("FORM") feature which makes electric-only or electric-assisted driving unavailable for extended periods of time. (*Id.* at

---

[1] The briefing associated with the pending motion to dismiss is found at D.I. 53, D.I. 54, and D.I. 58.

¶¶ 1-3, 63)  Below is a chart detailing for each named Plaintiff[2] their name, state of residence, and state in which they purchased a Class Vehicle:

| NAME | STATE OF RESIDENCE | STATE OF PURCHASE / LEASE |
|---|---|---|
| Jesse Crowell | New Jersey | Maryland |
| Jason Figley | Pennsylvania | Pennsylvania |
| Kenneth Forst | Minnesota | Minnesota |
| Stephanie Gelber | New York | New York |
| Christopher Gittings | Montana | Montana |
| Lonnie Heeter | Indiana | Michigan |
| Mike Kwiatkowski | Ohio | Ohio |
| Peter Nau | Iowa | Iowa |
| Bener Saka | New York | New York |
| Robert Thompson | Georgia | Georgia |
| Anshuman Singh | California | California |
| Theresa Clark | Colorado | Colorado |
| Jeremy Erskine | New York | New York |
| Michael Lindgren | Oregon | Oregon |
| Jeffrey Monheit | New Hampshire | New Hampshire |
| Mackenzie Pirie | Michigan | Michigan |
| Amy Schachow | Michigan | Michigan |
| Mike Bennett | Colorado | Colorado |
| Mike Chavez | Colorado | Colorado |
| Jennifer Berner | Nebraska | Oklahoma |
| Frank Koss | Vermont | New York |
| Michael McGowan | Illinois | Illinois |
| Renee & Joshua Miller | Pennsylvania | Pennsylvania |
| Gabriel Morrison | Wisconsin | Wisconsin |
| William Nevitt | New Jersey | New Jersey |
| Matthew Raque | Illinois | Illinois |
| George Souders | Minnesota | Minnesota |
| Chad Altschafl | Wisconsin | Wisconsin |
| Gregory Grigoriou | Connecticut | Connecticut |
| Aaron Kornblum | Washington | Indiana |
| Tracy & John Hansen | Ohio | Ohio |
| Mark Grams | Colorado | New Mexico |

---

[2] On July 2, 2024, Plaintiffs voluntarily dismissed plaintiff Jillian Kavanagh from the action pursuant to Fed. R. Civ. P. 21(a)(1)(A)(i).  (D.I. 64)  At oral argument, the parties confirmed that Joshua Taylor is no longer a named Plaintiff in this matter in accordance with the CAC. (7/16/2024 Tr.)

The Class Vehicles have both a gasoline engine and an electric motor to enable gasoline-only, battery-only, or combination driving. (*Id.* at ¶¶ 53, 63) Defendant advertises the Wrangler 4xe as being capable of up to 21 miles of electric-only driving before switching to the gasoline engine. (*Id.* at ¶¶ 52, 55-56, 59-62) The Grand Cherokee 4xe is alleged to have up to 25 miles of pure electric range. (*Id.* at ¶ 70) Advertisements for the Class Vehicles emphasize their ability to perform in cold weather. (*Id.* at ¶¶ 72-75) The Class Vehicles cost between $20,000 and $24,000 more than their gasoline-only counterparts. (*Id.* at ¶ 54) Plaintiffs paid this premium to obtain the benefits of the Class Vehicles' electric-only or electric-assisted functionality. (*Id.* at ¶¶ 5, 93)

The FORM feature in the Class Vehicles is triggered "if the system detects a stale fuel or aged oil condition after a long period without combustion engine operation" to maintain the engine lubrication properties and prevent engine or fuel system damage. (*Id.* at ¶¶ 77-78) The manual states that frequent short trips in cold temperatures may also trigger FORM. (*Id.* at ¶ 79) Originally, the manual indicated that the gasoline engine may need to run for a period of up to 20 minutes when fully warm before exiting FORM. (*Id.* at ¶ 83) This guidance was later amended to increase the estimate to 2.5 hours when fully warm. (*Id.* at ¶ 85) However, some consumers had almost no pure electric-powered transport for months while their Class Vehicles remained in FORM. (*Id.* at ¶¶ 83-84) Defendant acknowledges that vehicles enter FORM more often and for longer stretches when the weather is cold. (*Id.* at ¶ 88)

The Class Vehicles come with a 3-year/36,000 mile Basic Limited Warranty that covers defects "in material, workmanship or factory preparation," a 5-year/60,000 Powertrain Limited Warranty for powertrain components that are defective "in workmanship and materials," and a

10-year/150,000 mile warranty covering the high voltage battery.  (*Id.* at ¶¶ 473, 488, 572; D.I. 53, Exs. A-D)

## II.    LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## III.  DISCUSSION

### A.  Fraud-Based Claims (Counts I, II, IV, V, X, XII-XVII, XIX, and XXII-XXXVI)

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiffs' common law fraud claims.  Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "Particularity" has been interpreted to require a plaintiff to "place the defendant on notice of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation."  *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918-19 (3d Cir. 2018).

The parties dispute whether the heightened Rule 9(b) pleading standard extends to some or all of Plaintiffs' state statutory consumer protection claims.  According to Plaintiffs, at least fourteen of the state statutes require a lower degree of specificity or have a scope that extends beyond fraud, and the Rule 8(a) standard should apply to these claims.  (D.I. 54 at 4 & n.1-2)  Defendant cites recent case authority holding that "plaintiffs may subject even non-fraud claims to the heightened pleading standard of Rule 9(b)" when the cause of action rests on allegations of the defendant's fraudulent conduct.  *Diaz v. FCA US LLC*, C.A. No. 21-906-EJW, 2022 WL 4016744, at *20-21 n.27 (D. Del. Sept. 2, 2022).  However, there is no consensus on the proper pleading standard applied to state statutory consumer protection claims among district courts in the Third Circuit.  *Compare id.* (applying Rule 9(b) standard to New York state consumer protection statute that extended beyond common law fraud and was generally not subject to the heightened pleading standard), *with In re Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *7 (D.N.J. Oct. 26, 2015) (declining "to apply a blanket approach to whether the heightened

pleading standards of Rule 9(b) apply without reference to the specific state [consumer protection] law at issue."). Regardless of which standard applies, the CAC plausibly alleges claims based on actionable omissions but does not state a claim for fraud based on affirmative misrepresentations.

### 1. Actionable misrepresentation or omission

Defendant contends that the CAC fails to identify any actionable misstatement or misrepresentation because the pleaded averments recite only "generalized promotional language amounting to nonactionable puffery" or "a claim of capacity or characteristic that Plaintiffs fail to show is actually false." (D.I. 53 at 13) Plaintiffs respond by citing to portions of the CAC which describe Defendant's product pages and advertisements making claims about the electric-mode capabilities of the Class Vehicles. (D.I. 54 at 8-9)

I recommend that the court GRANT Defendant's motion to dismiss the CAC's allegations of fraud by affirmative misrepresentation because the CAC fails to plausibly allege that Defendant made a false statement. *See Maugain v. FCA US LLC*, C.A. No. 22-116-GBW, 2023 WL 1796113, at *11 (D. Del. Feb. 7, 2023) (granting motion to dismiss claims based on fraudulent misrepresentations due to complaint's failure to allege that the defendant made a false statement). Plaintiffs focus on averments in the CAC that include screenshots of Defendant's website describing the Class Vehicles as having "up to" 21 to 25 miles of all-electric range and indicating customers "can . . . get around town on all-electric power." (D.I. 49 at ¶¶ 59-61, 64-65, 70) The CAC alleges that these representations were false or misleading because Plaintiffs were deprived of electric-only driving as advertised, even when their vehicles were fully charged. (*Id.* at ¶¶ 76-78; *see, e.g.*, ¶¶ 113, 116, 126-27, 136, 148)

The CAC does not plausibly establish that these representations were false. A reasonable consumer would understand that the phrase "up to" implies that the electric range could at times be less than the 21 to 25 miles of advertised electric-only range. *See Twardzik v. HP Inc.*, C.A. No. 21-396-SB, 2022 WL 606092, at *4-5 (D. Del. Jan. 25, 2022). The advertisements and materials cited in the CAC represent that the Class Vehicles may achieve up to 21 to 25 miles of electric range without making any suggestion that the maximum electric range is always achievable. In fact, the CAC explains how Plaintiffs were informed in the owner's manuals that their vehicles would be unable to access electric-only or electric-assisted driving when the Class Vehicles are in FORM. (D.I. 49 at ¶¶ 77, 79) These conditions on the Class Vehicles' ability to perform in electric mode do not render false the representations that the Class Vehicles can achieve 21 to 25 miles of electric range in favorable conditions. *Twardzik*, 2022 WL 606092, at *5 (dismissing claims of alleged false misrepresentations where the plaintiff did not deny that the laptop could run at advertised speeds, if only under certain conditions).

Even if Defendant's advertisements qualified as affirmative misrepresentations, the CAC does not adequately allege that Plaintiffs relied on those misrepresentations in purchasing the Class Vehicles.[3] The CAC alleges that Plaintiffs considered Defendant's representations, including the reported 21-mile electric range, before purchasing the Class Vehicles. (D.I. 49 at ¶¶ 110, 123, 133, 145, 164, 174, 182, 190, 201, 211) But these averments do not identify which advertisements Plaintiffs saw or when they considered the statements. Instead, the CAC

---

[3] Some state statutory consumer protection laws require a showing of reliance, while others do not. *Compare Robinson v. Gen. Motors LLC*, C.A. No. 20-663-RGA-SRF, 2021 WL 3036353, at *9-10 (D. Del. July 19, 2021) (listing state consumer protection statutes that include the element of reliance), *with In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1015 (N.D. Cal. 2018) (citing cases and explaining that reliance is not required for all consumer protection statutes). Regardless, the averments in the CAC are sufficient to plausibly allege reliance.

describes the same formulaic circumstances for each Plaintiff: "Plaintiff [ ] made the decision to purchase [his/her] Class Vehicle after considering FCA's representations about the Class Vehicle, including the reported [21-mile/25-mile] electric range.  Plaintiff [ ] chose the Class Vehicle based primarily on its represented range[.]" (*Id.*)  These conclusory allegations are not sufficient to show Plaintiffs' reliance on the alleged affirmative misrepresentations. *See Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689, at *14 (D.N.J. June 25, 2021); *see also McCoy v. Samsung Elecs. Am., Inc.*, 2023 WL 6140641, at *8 (D.N.J. Sept. 20, 2023). Consequently, I recommend that the court GRANT Defendant's motion to dismiss to the extent the CAC alleges claims sounding in fraud based on affirmative misrepresentations.

However, the CAC plausibly pleads an actionable omission by alleging that the Class Vehicles contained a material defect and Defendant withheld information about it. (D.I. 49 at ¶¶ 94, 97)  To the extent that the Rule 9(b) standard applies, it is relaxed for allegations of fraudulent omissions based on information within the defendant's exclusive control because the plaintiff cannot specify the time, place, and specific content of the omission. *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018); *see also Bolton v. Ford Motor Co.*, C.A. No. 23-632-GBW, 2024 WL 3328522, at *9 (D. Del. July 8, 2024).  Generally, a pleading must allege: (1) "the fact at issue was basic to the transaction[,]" (2) "a legitimate reason to rely on" the entity that did not disclose the information, and (3) the claimant could not have discovered the issue. *Bolton*, 2024 WL 3328522, at *9 (quoting Restatement (Third) of Torts: Liab. For Econ. Harm § 13, cmt. d (2020)).

Here, Plaintiffs allege that Defendant did not disclose the extent of the FORM defect, and the omission was misleading because of Defendant's advertisements highlighting the electric-only range of the Class Vehicles. (*See, e.g.*, D.I. 49 at ¶¶ 94, 415, 419, 430, 434, 522, 539, 556,

560)  The CAC also avers that the Class Vehicles' electric driving capabilities were basic to the transactions because Plaintiffs paid a significant premium for the hybrid features.  (*Id.* at ¶¶ 5, 54, 93)  Plaintiffs further claim that, had they known about the true extent of the FORM defect at the time of sale or lease, they would not have purchased the Class Vehicles.  (*See, e.g.*, *id.* at ¶¶ 120, 130, 142, 161, 171, 179, 187, 198, 208, 216, 222)

These averments are sufficient to support Plaintiffs' fraud-by-omission claims.  *See Bolton*, 2024 WL 3328522, at *9 (denying motion to dismiss fraud-by-omission claims where the complaint alleged an omission of information that altered the drivability of the vehicles and stated that the plaintiffs would not have purchased or leased the vehicles if they had known of the defect).  As discussed during oral argument, Defendant's disclosures about FORM in the owner's manuals for the Class Vehicles did not disclose the possibility that the Class Vehicles could remain in FORM indefinitely, the frequency at which FORM may manifest, or the conditions necessary to exit FORM.  (D.I. 65 at 58:11-22)  Thus, Plaintiffs were deprived of material information about the electric-only capabilities of their Class Vehicles that impacted their purchasing decision.  *See Opheim*, 2021 WL 2621689, at *14.  For these reasons, I recommend that the court DENY Defendant's motion to dismiss Plaintiffs' fraud-by-omission claims.

### 2.  Pre-sale knowledge

Defendant also challenges the sufficiency of the pleaded allegations that Defendant knew about the alleged defect before Plaintiffs purchased their vehicles, as required to state a claim for a fraudulent omission.  (D.I. 53 at 14); *see Maugain*, 2023 WL 1796113, at *8.  According to Defendant, the CAC's averments regarding customer complaints, information sent from dealers, internal records on pre-sale durability testing, and the content of owner's manuals and technical

service bulletins are not sufficient to support Defendant's pre-sale knowledge of an alleged

defect.  (D.I. 58 at 3-4)

Defendant's position is not persuasive because knowledge may be alleged generally.

Fed. R. Civ. P. 9(b); *see also Bolton*, 2024 WL 3328522, at *10.  "[I]n assessing pre-sale

knowledge under this standard, courts consider the totality of the allegations . . . collectively and

do not . . . attack each allegation one-by-one."  *Opheim*, 2021 WL 2621689, at *15 (internal

citations and quotation marks omitted).  The CAC references multiple sources, including a

technical service bulletin, consumer complaints, changes to the owner's manual, online forum

posts, and Defendant's pre-sale design and testing of the Class Vehicles.  (D.I. 49 at ¶¶ 6, 48, 80,

85, 95, 98-100)  Defendant represented in its promotional materials that it had "logged over 1.4

million miles of real world on-road and off-road validation in all the corners of the world to

make sure it's ready."  (*Id.* at ¶ 63)  Viewed collectively, these allegations support an inference

of Defendant's pre-sale knowledge of the FORM defect.  *See Opheim*, 2021 WL 2621689, at *15

(rejecting the defendant's effort to go through each source individually, and finding sufficient

plaintiffs' allegations that the defendant knew generally that the timing chain was a problem);

*see also McCoy*, 2023 WL 6140641, at *5 ("[A]nalyzing the allegations in their entirety, the

online posts and allegations of warranty claims add to the plausible, though hardly compelling,

inference that [the defendant] had pre-sale knowledge.").

Additional information relevant to the pre-suit knowledge inquiry is in Defendant's hands

and should be tested through the discovery process.  *See id.* ("Where, as here, the relevant

information is in the defendant's hands, the Court will more readily open the doors of

discovery.").  The issuance of service bulletins and changes made to the owner's manual

following the purchase of some of the Class Vehicles does not necessarily contradict Plaintiffs'

allegations of pre-sale knowledge when viewed in the context of the pleaded averments more broadly. *See Robinson*, 2021 WL 3036353, at *6 (explaining that service bulletins issued post-sale may support an inference of the seller's pre-sale knowledge of the defect); *see also Bolton*, 2024 WL 3328522, at *10-11 (concluding that allegations of pre-release testing data, together with allegations of service bulletins and complaints, were sufficient to plausibly plead pre-sale knowledge even where no pleaded facts showed internal testing actually alerted the defendant to the defect). When post-sale complaints and service bulletins are considered along with allegations of pre-sale testing, it is reasonable to infer that such testing revealed the same defect discovered by consumers subjecting the Class Vehicles to ordinary use. *See Almeida v. Apple, Inc.*, 2023 WL 3149252, at *1 (N.D. Cal. Mar. 1, 2023); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 684-85 (E.D. Mich. 2020).

### 3. Duty to disclose

Defendants next contend that the CAC does not allege the existence of a fiduciary relationship which would trigger a duty to disclose, as required to state a claim for fraud in many states. (D.I. 53 at 15) Plaintiffs maintain that the CAC satisfies any state statutory or common law requirements pertaining to the duty to disclose by alleging that Defendant had superior knowledge of the defect and suggesting that Defendant made a partial, incomplete disclosure about the Class Vehicles' capabilities in cold weather. (D.I. 54 at 11-12)

The CAC contains plausible allegations that Defendant had superior and/or exclusive knowledge of the frequency and duration of the FORM defect, which could not be discovered by consumers until the FORM cycle was triggered. (D.I. 49 at ¶¶ 6, 49-50, 111) The CAC also plausibly alleges that Defendant made partial, inaccurate disclosures about the operation of the Class Vehicles in electric-only mode and the capabilities of the Class Vehicles for electric-only

driving in cold weather. (*Id.* at ¶¶ 3-5, 70-75)  As previously stated at § III.A.1, *supra*, the owner's manuals disclosed that FORM may be triggered under certain conditions, but these disclosures underestimated the potential length a Class Vehicle would remain in FORM and did not disclose material information about the frequency at which FORM may manifest or the conditions necessary to exit FORM. (*Id.* at ¶¶ 77-79, 82-86; D.I. 65 at 58:11-22)  For state statutory and common law claims that require a duty to disclose, these allegations are sufficient to establish that the duty existed here. *See, e.g.*, *Murphy v. Toyota Motor Sales USA Inc.*, 2021 WL 2801456, at *5 (C.D. Cal. Apr. 21, 2021) (explaining that fraud claims based on omission depend on allegations of a duty to disclose on the part of the defendant).

### 4.  State-specific issues

Defendant also raises several state-specific issues in support of its motion to dismiss. The court's analysis and recommendation on each state-specific issue is set forth below.

### a.  Economic loss doctrine

First, Defendant argues that Plaintiffs' common law fraud claims are barred in certain states under the economic loss rule, which bars a plaintiff's recovery in tort for purely economic losses. (D.I. 53 at 17)  According to Defendant, the economic loss doctrine bars Plaintiffs' common law fraud claims in California, Colorado, Maryland, Michigan, Nebraska, New Hampshire, New York, Georgia, Ohio, Oregon, Pennsylvania, and Wisconsin. (*Id.*)  Plaintiffs respond that Defendant's argument "glosses over a series of contradictory holdings" and include a footnote citing cases. (D.I. 54 at 13 n.13)  Plaintiffs' footnote does not include case authority from Nebraska, New Hampshire, Oregon, or Wisconsin. (*Id.*; D.I. 58 at 5)

I recommend that the court DENY without prejudice Defendant's motion to dismiss Plaintiffs' common law fraud claims under the economic loss doctrine.  Generally, the economic

loss doctrine is "cabined to bar only actions sounding in negligence and other unintentional torts, not intentional fraud." *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 2023 WL 8602971, at *11 (E.D. Mich. Dec. 11, 2023) (quoting *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 687 (E.D. Mich. 2020)).  A survey of case authorities performed by the court in *In re Chrysler Pacifica* suggests that the economic loss doctrine may not bar consumer fraud or fraudulent concealment claims under California, Colorado, Georgia, Maryland,[4] Michigan, New Hampshire, Pennsylvania, Ohio, and Wisconsin. *Id.* at *12-14 (citing cases).  Moreover, Plaintiffs' cited authority establishes that courts applying New York law have allowed fraud-based claims to proceed, "notwithstanding the economic loss rule." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citing cases).  However, application of the doctrine varies across states, and the law remains unsettled in some of the jurisdictions at issue here. *See, e.g.*, *Bolton*, 2024 WL 3328522, at *16 (declining to bar common law omission claims under California's interpretation of the economic loss rule "[b]ecause the scope of this exception is unsettled under California law.").

The parties' briefing on the economic loss doctrine is limited to competing string citations with little context or analysis. (D.I. 54 at 13 n.13; D.I. 58 at 5-6)  Confronted with a similar situation, one court recently declined to make a "drive by *Erie* guess"[5] for each state's law, observing that "a federal court sitting in diversity must proceed with caution in making

---

[4] Under Maryland law, the fraudulent concealment must pertain to a defect that gives rise to a serious risk of bodily harm. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 590 (E.D. Mich. 2018).  Here, the complaint alleges that a safety issue exists because the inability to use electric power greatly diminishes the Class Vehicles' acceleration. (D.I. 49 at ¶¶ 129, 141, 159, 170, 178, 186, 197, 207, 215, 221, 228, 235, 241, 266, 272, 279, 369)

[5] The court explained that "[t]he phrase '*Erie* guess' refers to the Supreme Court's decision in *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), which held that federal courts sitting in diversity must apply state common law." *In re Generac*, 2024 WL 2519778, at *7 n.9.

13

pronouncements about state law." *In re Generac Solar Power Sys. Mktg., Sales, Practices, & Prods. Liab. Litig.*, 2024 WL 2519778, at *7 (E.D. Wis. May 24, 2024) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)).  In deferring a ruling on the application of the economic loss doctrine, the court observed the "limited utility in taking a scalpel to the complaint and excising only a few of plaintiffs' many legal theories." *Id.*  The same approach is warranted here.

### b.   GUDTPA prohibition on monetary relief (Count XVII)

Defendant alleges that Count XVII should be dismissed under Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), which prohibits monetary relief, because the CAC does not allege an actual continuing harm to plaintiff Thompson that would be remedied by injunctive relief.  (D.I. 53 at 17)  Plaintiffs respond that, because Defendant continues to actively conceal the defect by representing that it does not exist, this is enough to maintain a claim under Georgia law for injunctive relief, which also sustains the claim for damages.  (D.I. 54 at 14)  Viewing the pleaded allegations in the light most favorable to Plaintiffs at this early stage, I recommend that the court DENY Defendant's motion to dismiss Count XVII on this basis because the CAC contains plausible averments of continuing harm.  (D.I. 49 at ¶¶ 585, 593)

### c.   MCPA exemption for auto sales (Count V)

Defendant also seeks dismissal of Count V, brought under the Michigan Consumer Protection Act ("MCPA"), arguing that claims based on the advertisement or sale of an allegedly defective automobile are not actionable under the MCPA.  (D.I. 53 at 17-18)  Recent case authority supports Defendant's position.  In *Droesser v. Ford Motor Company*, the court explained that the MCPA includes a statutory exemption for transactions specifically authorized under laws administered by a regulatory board or officer, and the Michigan Court of Appeals

held that the manufacture, sale, and lease of automobiles falls within this statutory exemption. 2023 WL 2746792, at *22 (E.D. Mich. Mar. 31, 2023) (quoting *Cyr v. Ford Motor Co.*, 2019 WL 7206100, at *2 (Mich. Ct. App. Dec. 26, 2019)). Consequently, I recommend that the court GRANT Defendant's motion to dismiss Count V.

### d.   OUTPA statute of limitations (Count XXVIII)

Defendant argues Count XXVIII should be dismissed under the one-year statute of limitations applicable to claims brought for violation of the Oregon Unlawful Trade Practices Act ("OUTPA"). (D.I. 53 at 18)  There is no dispute that Plaintiff Lindgren leased his vehicle on July 13, 2021, and this suit was not brought until January 31, 2023. (D.I. 49 at ¶ 238)  However, Plaintiffs allege that the statute of limitations is tolled by the discovery rule, and Lindgren did not discover the defect until shortly before the commencement of the action. (D.I. 54 at 15)

The CAC generally states that "Plaintiffs and Class members did not discover, and could not have discovered, through the exercise of reasonable diligence, that the Class Vehicles had one or more design and/or manufacturing defects that blocked access to electric-only mode more often and for longer than was reasonable." (D.I. 49 at ¶ 49)  A dispute of fact exists regarding precisely when Lindgren discovered the defect after leasing the vehicle in July of 2021. *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 139 (Or. 2015) ("[I]f disputed facts must be resolved to determine if a claim is time barred, those facts must be resolved by the finder of fact at trial."). The pleaded facts show that some Plaintiffs did not experience the defect until approximately five to six months after purchasing the vehicle, and one Plaintiff drove 10,500 miles before experiencing the alleged defect. (D.I. 49 at ¶¶ 109, 113, 167, 189, 193)  Thus, it is plausible to infer that Lindgren may not have discovered the defect until at least January 31, 2022, one year prior to the filing of this lawsuit. The case authority cited by Defendant is distinguishable

because it did not involve a product defect, and the plaintiff claimed she did not discover the alleged misrepresentation until eight years after the misrepresentation was made—a much more significant gap than the six month period in question in the instant case. *See Swango v. Nationstar Sub1, LLC*, 2018 WL 4100661, at *10 (D. Or. Aug. 27, 2018). I recommend that the court DENY Defendant's motion to dismiss Count XXVIII on this basis.

### e. WDTPA prohibition on omission-based claims (Count XXIX)

Defendant moves to dismiss Count XXIX because it is an omission-based claim, and the Wisconsin Deceptive Trade Practices Act ("WDTPA") only applies to claims based on affirmative misrepresentations. (D.I. 53 at 18) For the reasons set forth at § III.A.1, *supra*, the CAC states a plausible claim for fraudulent omission, but not for an affirmative misrepresentation. *See In re Chrysler Pacifica*, 2023 WL 8602971, at *17 (dismissing claim under the WDTPA because the statute did not provide a cause of action for "mere omissions"). Consequently, I recommend that the court GRANT Defendant's motion to dismiss Count XXIX on this basis.

### f. Colorado CPA class action bar (Count XXVI)

Defendants contend that Count XXVI should be dismissed because the Colorado Consumer Protection Act ("Colorado CPA") bars claims for money damages that are brought as a class action. (D.I. 53 at 18) Plaintiffs agree that the Colorado CPA bars class action claims for monetary damages, but they argue that the CAC also seeks injunctive relief. (D.I. 54 at 16) Count XXVI of the CAC expressly states that Plaintiffs and the Colorado subclass "seek an order enjoining Defendant's unfair and/or deceptive acts or practices" pursuant to Colo. Rev. Stat. § 6-1-113. (D.I. 49 at ¶ 691) Consequently, I recommend that the court DENY Defendant's motion to dismiss Count XXVI to the extent that it seeks injunctive relief.

g.   **Lack of pre-suit notice under the CLRA and UCL (Counts XXIII and XXIV)**

Defendant argues that Counts XXIII and XXIV should be dismissed because the California Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") require the plaintiff to notify the defendant of any alleged violations thirty days before filing suit. (D.I. 53 at 18-19)  Plaintiffs respond that any deficiency in pre-suit notice of the CLRA claim is not a basis for dismissal because Defendant has now had notice for more than thirty days, and pre-suit notice is not required under the UCL.  (D.I. 54 at 16)

There is no dispute that Plaintiffs did not provide Defendant with pre-suit notice thirty days before bringing this action.  The CAC states that "Plaintiff provided FCA . . . with notice of its CLRA violations on January 31, 2023," which is the same day the lawsuit was filed.  (D.I. 49 at ¶ 664)  However, the CAC was filed on December 20, 2023, well over thirty days after Plaintiffs provided notice of the CLRA violation.  (*Id.*)  In accordance with Defendant's own case authority, the passage of time between the date notice was provided and the date the amended pleading was filed is sufficient to remedy the defect.  *Pizana v. SanMedica Int'l LLC*, 2019 WL 4747947, at *10 (E.D. Cal. Sept. 30, 2019) (citing *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1220 (E.D. Cal. 2013)).  Moreover, Defendant's cited authority does not support its position that a pre-suit notice requirement applies to the UCL claim.  Consequently, I recommend that the court DENY Defendant's motion to dismiss Counts XXIII and XXIV on this basis.

## B. Equitable Claims (Counts III, IX[6])

Defendant seeks dismissal of Plaintiffs' claim for unjust enrichment, arguing that

Plaintiffs fail to plead the lack of an adequate remedy at law. (D.I. 53 at 19-21)  But it is well-

established that Plaintiffs may plead unjust enrichment claims in the alternative to their claims at

law. *Opheim*, 2021 WL 2621689, at *18 (citing cases).  Defendant's position that the equitable

causes of action for declaratory and injunctive relief should be dismissed because they are

remedies, as opposed to claims, is also unpersuasive.  "As a general matter, courts only dismiss

*claims* not *remedies* at this early stage." *Opheim*, 2021 WL 2621689, at *15 (emphasis in

original).  The CAC alleges that Defendant failed to implement a recall or otherwise fix the

alleged defect.  (D.I. 49 at ¶¶ 97, 117, 128, 139, 154, 177, 185, 193-95, 204-06, 342-45, 365-68)

Viewing the pleaded factual allegations in the light most favorable to Plaintiffs, it is plausible to

infer that Plaintiffs lack an adequate remedy at law based on Defendant's failure to fix the

alleged design defect which falls outside the scope of the express warranty.  Consequently, I

recommend that the court DENY Defendant's motion to dismiss Counts III and IX of the CAC.

## C. Warranty Claims

### 1. Implied warranty of merchantability claims (Counts VI, XVIII, XX, XXI)[7]

Defendant moves to dismiss Plaintiffs' claims for breach of the implied warranty of

merchantability because there are no plausible averments that the Class Vehicles are unsafe or

---

[6] Defendant identifies Count VIII as an equitable claim in the corresponding subheading of its brief. (D.I. 53 at 19)  Count VIII asserts a cause of action for breach of express warranty. (D.I. 49 at ¶¶ 466-81)  The paragraphs cited by Defendant align with Count IX, which avers a cause of action for unjust enrichment/restitution, an equitable claim. (*Id.* at ¶¶ 482-92)

[7] Count VI of the CAC also avers a claim for common law breach of the implied warranty of fitness for a particular purpose. (*See, e.g.*, D.I. 49 at ¶¶ 445-46)  "[A] product's ordinary purpose relates to the implied warranty of merchantability of a product, whereas an implied warranty for fitness for a *particular* purpose necessarily involves something beyond a product's *ordinary* purpose." *Williams v. Amazon, Inc.*, 573 F. Supp. 3d 971, 976 (E.D. Pa. 2021) (emphasis in

cannot provide reliable transportation.  (D.I. 53 at 22)  In response, Plaintiffs argue that the proper inquiry is whether the plug-in hybrid Class Vehicles are fit for the ordinary purpose of electric-only driving, and the substantially lower price point of vehicle models without electric propulsion shows that the electric-only driving mode is among the "ordinary uses" of the Class Vehicles.  (D.I. 54 at 18)

I recommend that the court DENY Defendant's motion to dismiss the CAC's causes of action for breach of the implied warranty of merchantability.  The CAC alleges that the Class Vehicles are not merchantable or fit for their ordinary purpose because they are plug-in hybrid vehicles that do not reliably provide electric-only or electric-assisted operation.  (D.I. 49 at ¶¶ 445, 450-51)  Recent case authority supports Plaintiffs' position that this is enough to state a claim for breach of the implied warranty of merchantability at this early stage.  In *Kavon v. BMW of North America, LLC*, the court explained that "battery-powered propulsion is arguably the very feature which induces a consumer to purchase the [Class Vehicle] in the first place.  A consumer purchases a [Class Vehicle] at a premium based on the expectation that the vehicle will run, most of the time, on electricity rather than gasoline."  605 F. Supp. 3d 622, 637 (D.N.J. 2022); *see also In re Chrysler Pacifica*, 2023 WL 8602971, at *23 ("The defendant's position entirely ignores the fact that a major component of the class vehicles' 'ordinary and intended use' . . . is the ability of the vehicle to drive entirely on stored electric charge for substantial distances, thereby achieving superior gas mileage.").  As a result, the court declined to dismiss the claim for breach of the implied warranty of merchantability based on the defendant's recall

___

original).  At oral argument, Defendant confirmed that dismissal of the claim for breach of the implied warranty of fitness for a particular purpose has not been sought.  (D.I. 65 at 30:6-18)  Thus, regardless of the outcome of the motion to dismiss as it pertains to the breach of the implied warranty of merchantability, the portion of this claim directed to the breach of the implied warranty of fitness for a particular purpose will survive.

19

instructing users not to use their hybrid vehicles' electric mode. *Id.* By alleging that the defect prevents Plaintiffs from routinely driving on electric power, the CAC plausibly states that the Class Vehicles are not fit for their ordinary purpose. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 979 (E.D. Mich. 2022) (explaining that a claim for breach of the implied warranty of merchantability may survive a motion to dismiss even where the plaintiff can continue to drive the vehicle).

Even if the court were to follow other case authority holding that limitations on a hybrid vehicle's electric-only range do not render the vehicle unmerchantable, *see, e.g., Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016), *aff'd sub nom.* 708 F. App'x 242 (6th Cir. 2017), the allegations in the CAC would nonetheless support the recommended denial of Defendant's motion to dismiss the implied warranty claims. Plaintiffs have identified a safety risk associated with the alleged defect in the form of diminished acceleration. (D.I. 49 at ¶¶ 129, 141, 159, 170, 178, 186, 197, 207, 215, 221, 228, 235, 241, 266, 272, 279, 369) It is well-established that a vehicle must provide safe transportation and operate in a safe condition to satisfy the requirements of merchantability. *See In re Chrysler Pacifica*, 2023 WL 8602971, at *22. Although the risk of diminished acceleration may not pose the same level of safety risk as the risk of battery combustion in *In re Chrysler Pacifica*, courts have found lesser safety risks sufficient to satisfy the requirements of a claim for breach of the implied warranty of merchantability. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 947-48 (N.D. Cal. 2018) (denying summary judgment on claim for breach of the implied warranty of merchantability where the defective rear-view camera whose image spontaneously froze when car was in reverse posed a safety hazard). Whether the defect is "so severe that the [Class Vehicles] could not be said to provide safe, reliable transportation is a

question of fact for the jury." *Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 441 (D. Del. 2023) (quoting *Click v. Gen. Motors LLC*, 2020 WL 3118577, at *11 (S.D. Tex. Mar. 27, 2020)).

Defendant further alleges that Counts VI, XVIII, and XXI should be dismissed because Plaintiffs failed to provide adequate pre-suit notice as required under Georgia and Pennsylvania law because the notice letters were sent only shortly before those Plaintiffs joined the litigation and the letters lacked substantive content. (D.I. 53 at 23-24) Defendant's pre-suit notice argument does not provide a basis for dismissal of Plaintiffs' implied warranty claims. The CAC alleges that "Defendant was put on constructive notice about its breach through its review of consumer complaints and upon information and belief, through product testing and communications from dealerships." (D.I. 49 at ¶ 454) Although different states have different levels of strictness regarding the notice requirement, the sufficiency of the notice is generally an issue of fact if the pleading alleges the defendant has at least some notice. *See Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1279 (E.D. Mich. Mar. 31, 2021); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, 2014 WL 3557189, at *7 (M.D. Pa. July 17, 2014) ("Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact."); *Dermatology Specialists of Augusta, Inc. v. Daikin Applied Ams. Inc.*, 2019 WL 97831, at *3 (S.D. Ga. Jan. 3, 2019) ("The issue of whether notice was reasonably given and sufficient to provide the defendant with an opportunity to cure . . . is generally reserved for summary judgment or trial.").

Finally, Defendant argues that Count XVIII should be dismissed because Thompson lacks privity with Defendant, a requirement under Georgia law. (D.I. 53 at 24) The CAC alleges that Thompson bought a 2021 Jeep Wrangler 4xe from a dealership in Georgia. (D.I. 49 at ¶ 163) Under Georgia law, Thompson's purchase of a vehicle from the manufacturer's authorized

dealer is sufficient to establish Thompson's privity with the manufacturer. *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 980 (E.D. Mich. Sept. 30, 2022) (citing *Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *5 (N.D. Ga. Mar. 23, 2016)). Consequently, Defendant's privity argument also fails to establish an independent basis to dismiss Count XV.

### 2. Magnuson-Moss Warranty Act claim (Count VII)

Under the Magnuson-Moss Warranty Act ("MMWA"), a pleading must include at least 100 named plaintiffs to satisfy the federal jurisdictional prerequisites. *Diaz*, 693 F. Supp. 3d at 445 (quoting *Robinson v. Gen. Motors, LLC*, C.A. No. 20-663-RTD, 2022 WL 19384806, at *4 (D. Del. Dec. 5, 2022)); *see Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023). There are less than forty named Plaintiffs in the instant action, below the 100 required to bring a MMWA claim in accordance with the applicable statute. *See* 15 U.S.C. § 2310(d)(3)(C). Therefore, I recommend that the court GRANT without prejudice Defendant's motion to dismiss Count VII and grant Plaintiffs leave to amend the pleading to include 100 named plaintiffs in support of the MMWA claim.

### 3. Express warranty claim (Count VIII)

Defendant argues that Plaintiffs' express warranty allegations should be limited to statements in the express warranty itself, and they should not be based on statements appearing in the owner's manual or advertisements. (D.I. 53 at 25) The breach of express warranty claim in the CAC is primarily based on a statement made in the owner's manual provided with every Class Vehicle, as opposed to the express warranty: "[T]he engine may run for a period of up to 20 minutes when fully warm whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips." (D.I. 49 at ¶¶ 467-68) The CAC also

identifies statements made in Defendant's advertising that describe the Class Vehicles as having an electric range of 21 miles to meet consumers' need for a vehicle that provides "nearly silent, zero-emission, electric-only propulsion." (*Id.* at ¶ 470)

However, the Class Vehicle warranty books contain a limitation barring express warranty claims based on statements that are not included in the warranty books: "The warranties contained in this booklet are the only express warranties" for the Class Vehicles. (*Id.*, Exs. A-D at 6)  Under the laws of multiple states where Plaintiffs purchased Class Vehicles, express warranty claims based on statements made in advertising or other materials outside of written warranty booklets are barred when the warranty booklets contain such a limitation. *See Flores v. FCA US LLC*, 2021 WL 1122216, at *7 (E.D. Mich. Mar. 24, 2021) (citing cases).

Plaintiffs' suggestion that statements in the owner's manual and advertisements constitute affirmations which become part of the basis of the bargain is not persuasive. (D.I. 54 at 21)  Even if the court were to ignore the limitation on express warranties contained in the warranty books, the CAC does not aver that Plaintiffs relied on the material in the owner's manual and advertisements. *See Webb v. Volvo Cars of N.A., LLC*, 2018 WL 1470470, at *7 (E.D. Pa. Mar. 26, 2018) ("Where an express warranty claim is based on advertisements, a plaintiff must allege that she saw or heard, and also believed, the allegedly false advertisements in order to satisfy her obligation to allege that advertisements formed the basis of the bargain."); *see also* § III.A.1, *supra*.  Consequently, statements made in the owner's manuals and advertisements for the Class Vehicles cannot sustain Count VIII of the CAC for breach of express warranty.

Plaintiffs maintain that the express warranty claim should still survive even if it is limited to statements that were made in the warranty books. (D.I. 54 at 22)  But Defendant responds that the Basic Limited Warranty in the warranty books covers only defects "in material,

workmanship, or factory preparation," which describes manufacturing defects, and the only defect alleged by Plaintiff in the CAC is a design defect. (D.I. 53 at 26; Exs. A-D at 6)

Case authority from this district supports Defendant's position that a warranty covering defects in material, workmanship, or factory preparation applies exclusively to manufacturing defects and does not extend to design defects. *See Diaz*, 2022 WL 4016744, at *33-34 ("This language precisely mirrors the kind of language that courts . . . have read as signaling coverage of manufacturing defects *only*, excluding design defects."). To show that the CAC plausibly alleges the existence of a manufacturing defect covered by the warranty, Plaintiffs cite to limited excerpts of the CAC embedded in other causes of action. (D.I. 54 at 22 & n.17) These averments state in a conclusory manner that "the Class Vehicles suffer[ ] from a defective design and/or manufacture." (D.I. 49 at ¶¶ 451, 477) But "the Rule 8 pleading standard requires more than a bare assertion that manufacturing defects exist." *Maugain*, 2023 WL 1796113, at *15. Pleading manufacturing and design defects in the alternative does not save a manufacturing defect claim on a motion to dismiss "where the complaint makes only 'offhand references to manufacturing defects' and the purported class includes '*all* purchasers or lessees' of the vehicles at issue." *Diaz*, 2022 WL 4016744, at *35 (quoting *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226-27 (S.D.N.Y. 2015)).

The CAC does not plead facts specifying a flaw in the manufacturing process or distinguish between the different circumstances "that would necessarily lead to distinct, plausible claims for design and manufacturing defects." *Id.* at *35-36 (finding allegations about the substandard materials used or the manufacturing of the rear differential and its components were "simply too vague and conclusory to establish the factual basis of a manufacturing defect theory."). Instead, the CAC repeatedly avers that the defects are common to all Class Vehicles

and FORM mode was operating as designed. (*See, e.g.*, D.I. 49 at ¶¶ 85, 138, 185, 204, 214, 372, 463)  These allegations support the existence of a design defect, as opposed to a manufacturing defect. *See Diaz*, 2022 WL 4016744, at *33 ("[A] design defect is one that will be reflected across all products in the same line, since they were manufactured uniformly based on a faulty plan; a manufacturing defect is one where the *process* of manufacturing created a flaw inconsistent with the original design.").

Because the alleged design defect does not fall within the scope of the express warranty and the complaint fails to plausibly plead a manufacturing defect, I recommend that the court GRANT Defendant's motion to dismiss Count VIII of the CAC.  The court need not reach Defendant's additional arguments to dismiss Count VIII due to the lack of diagnosis and/or repair of the alleged defect, unconscionability of the warranty, or a lack of pre-suit notice. (D.I. 53 at 26-27); *see Maugain*, 2023 WL 1796113, at *16 (explaining that a failure to repair cannot breach a warranty unless a defect exists, and there was no viable defect where the warranties did not cover design defects and the complaint failed to plausibly allege manufacturing defects).

### D.  The UCL Claim (Count XXIV)

A plaintiff pursuing a claim for relief under the UCL must do so "under any or all of three theories: the 'unlawfulness,' 'fraudulent,' or 'unfairness' prongs." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. Apr. 16, 2021) (quoting *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010)).  Defendant contends that Plaintiffs' California UCL claim should be dismissed for four additional reasons: (1) the CAC does not adequately allege fraud under the "fraudulent" prong; (2) the CAC contains no facts tying the UCL claim to a legislative policy, anticompetitive behavior, or immoral conduct under the "unfairness" prong; (3) the CAC does not establish the violation of any other law under the

"unlawful" prong; and (4) the UCL provides only equitable relief, and the CAC does not allege that Plaintiffs lack an adequate remedy at law.  (D.I. 53 at 28)  In response, Plaintiff directs the court to portions of the CAC that plausibly establish the existence of the defect which was not disclosed to Plaintiffs and the safety risks associated with the defect.  (D.I. 54 at 26)

As previously discussed at § III.A, *supra*, the pleaded averments are sufficient to establish fraud by omission, thereby satisfying the "fraudulent" and "unfair" prongs of the UCL. The CAC describes the omissions made by Defendant, the safety risks posed by the defect, and Defendant's failure to offer a remedy for the defect.  (*See, e.g.*, D.I. 49 at ¶¶ 78-87, 128-29) Moreover, the CAC pleads a plausible claim for violation of the CLRA, which is sufficient to satisfy the "unlawful" prong at this early stage.  (*Id.* at ¶¶ 654-66); *see Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1112 (S.D. Cal. 2017) (explaining that a plausible claim for a CLRA violation based on a fraudulent omission was enough to satisfy violation of fraudulent and unlawful prongs of UCL, and failure to provide vehicle safety information violates public policy in satisfaction of "unfair" prong).

Defendant's argument regarding the unavailability of equitable relief under the UCL when there is an adequate remedy at law is also unpersuasive.  At the pleading stage, Plaintiffs may pursue alternative remedies under both the CLRA, which provides for monetary damages, and the UCL, which is limited to equitable relief.  *Collyer v. Catalina Snacks Inc.*, --- F. Supp. 3d ----, 2024 WL 202976, at *7 (N.D. Cal. Jan. 18, 2024) (distinguishing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and surveying cases permitting pursuit of alternative remedies at the pleading stage); *Luong v. Subaru of Am.*, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct.").  Therefore, I

recommend that the court DENY Defendant's motion to dismiss Count XXIV of the CAC on this basis.

### E. Extraterritorial Claims (Counts XXX, XXXII, XXXVI)

Defendant moves to dismiss the state statutory claims of Plaintiffs Berner, Koss, and Kornblum, who bring their claims under the laws of the states where they reside (Nebraska, Vermont, and Washington, respectively) instead of under the laws of the states where the allegedly fraudulent sales of the Class Vehicles occurred (Oklahoma, New York, and Indiana, respectively).  (D.I. 53 at 29-30)  This argument is not persuasive.

The CAC alleges that Berner is a citizen of Nebraska who purchased her Class Vehicle in Oklahoma.  (D.I. 49 at ¶¶ 31, 293-98)  The pleading also defines a Nebraska Subclass, indicating that the alleged conduct also extended to other Nebraskans.  (*Id.* at ¶ 372)  Case authority from Nebraska courts establishes that, "when a defendant engage[s] in a pattern of calculated conduct intended to defraud numerous citizens of [Nebraska] . . . courts have found the requisite impact on the public interest necessary to sustain a claim" under the Nebraska Consumer Protection Act. *Ordosgoitti v. Werner Enters., Inc.*, 2021 WL 2682711, at \*2 (D. Neb. June 30, 2021).  The location of the transaction is not preclusive to Plaintiffs' claim where, as here, the CAC alleges that the impact of the transaction affected Nebraska residents.  The same is true of fraudulent conduct affecting Vermont residents under the Vermont Consumer Protection Act and Washington residents under the Washington Consumer Protection Act.  *See MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co., Inc.*, 383 F. Supp. 3d 307, 313 (D. Vt. 2019) ("[T]he VCPA is intended to address fraudulent conduct affecting Vermont residents.  The allegations in this case satisfy that requirement since plaintiff is located in Vermont and alleges that actions by defendant taken outside of the state have damaged it here."); *Trader Joe's Co. v. Hallatt*, 835

F.3d 960, 976-77 (9th Cir. 2016) (explaining that the terms "trade" and "commerce" are broadly defined in the WCPA to include "any commerce directly or indirectly affecting the people of the state of Washington."). Consequently, I recommend that the court DENY Defendant's motion to dismiss Counts XXX, XXXII, and XXXVI on this basis.

### F. Nationwide Allegations (Counts I, II, VI, VII, VIII, and IX)

Defendant seeks dismissal of the nationwide class allegations for fraud by omission and affirmative representation (Counts I and II), breach of implied warranty (Count VI), violation of the Magnuson-Moss Warranty Act (Count VII), breach of express warranty (Count VIII), and unjust enrichment / restitution (Count IX) because the CAC does not assert these claims under the laws of all states and because Plaintiffs lack standing to assert claims under the laws of states where they do not reside and did not purchase a Class Vehicle. (D.I. 53 at 30) I recommend that the court DENY Defendant's motion to the extent that it asserts the nationwide class allegations as an independent basis for dismissal of Counts I, II, VI, VII, VIII, and IX at this stage of the proceedings. Instead, the matter of standing—specifically, whether named Plaintiffs may bring class action claims under the laws of states where the named Plaintiffs do not reside—is appropriately deferred until after class certification. *See Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022) ("Any problem with raising claims under several states' laws goes to the propriety of class certification, not standing."); *Maugain*, 2023 WL 1796113, at *4-5 (adopting approach taken in *Garner*); *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, C.A. No. 20-1076-CFC, 2022 WL 2438934, at *16 (D. Del. July 5, 2022) (deferring consideration of standing in other states until after class certification rather than "wad[ing] through complex issues of jurisdiction and constitutional law[.]").

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Defendant's

motion to dismiss (D.I. 52) without prejudice as follows:

| COUNT | RECOMMENDED DISPOSITION |
|---|---|
| Count I (Common Law Fraud by Omission) | DENY |
| Count II (Common Law Fraud – Affirmative Misrepresentation) | GRANT |
| Count III (Equitable Injunctive and Declaratory Relief - Maryland) | DENY |
| Count IV (Maryland Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count V (Michigan Consumer Protection Act) | GRANT |
| Count VI (Common Law Breach of Implied Warranty) | DENY |
| Count VII (Magnuson-Moss Warranty Act) | GRANT |
| Count VIII (Breach of Express Warranty) | GRANT |
| Count IX (Unjust Enrichment / Restitution) | DENY |
| Count X (New York General Business Law § 349) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XII[8] (New York General Business Law § 350) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XIII (Minnesota Prevention of Consumer Fraud Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XIV (Iowa Private Right of Action for the Consumer Frauds Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XV (Montana Unfair Trade Practices and Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XVI (Georgia's Fair Business Practices Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XVII (Georgia's Uniform Deceptive Trade Practices Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XVIII (Breach of Implied Warranty – Georgia) | DENY |

---

[8] The operative complaint skips directly from Count X to Count XII. There is no Count XI in the operative complaint. (D.I. 49)

| Count XIX (Ohio's Consumer Sales Practices Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XX (Implied Warranty in Tort – Ohio) | DENY |
| Count XXI (Breach of Implied Warranty – Pennsylvania) | DENY |
| Count XXII (Pennsylvania Unfair Trade Practices & Consumer Protection) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXIII (California Consumer Legal Remedies Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXIV (California Unfair Competition Law) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXV (California False Advertising Law) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXVI (Colorado Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation and/or seeks monetary relief; DENY in all other respects. |
| Count XXVII (New Hampshire Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXVIII (Oregon Unlawful Trade Practices Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXIX (Wisconsin Deceptive Trade Practices Act) | GRANT |
| Count XXX (Nebraska Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXXI (Massachusetts Deceptive Acts or Practices) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXXII (Vermont Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXXIII (Illinois Consumer Fraud and Deceptive Business Practices) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXXIV (New Jersey Consumer Fraud Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |

| Count XXXV (Connecticut Trade Practices Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |
| Count XXXVI (Washington Consumer Protection Act) | GRANT to the extent it asserts an affirmative misrepresentation; DENY in all other respects. |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 30, 2024

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE