IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JESSE CROWELL, et al., on behalf of )
themselves and all other similarly situated, )
)
Plaintiffs, )
) C.A. No. 23-13 (MN)
v. )
)
FCA US LLC, )
)
Defendant. )

## MEMORANDUM OPINION

Peter Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, DE – Interim Liaison Counsel for Plaintiffs

Dan E. Gustafson, David A. Goodwin, GUSTAFSON GLUEK PLLC, Minneapolis, MN; Nicholas A. Migliaccio, Jason S. Rathod, Mark D. Patronella, MIGLIACCIO & RATHOD LLP, Washington, DC; Scott David Hirsch, SCOTT HIRSCH LAW GROUP PLLC, Coconut Creek, FL – Interim Class Counsel for Plaintiffs

Gretchen Freeman Cappio, Ryan McDevitt, KELLER ROHRBACK, L.L.P., Seattle, WA; E. Powell Miller, Sharon S. Almonrode, Dennis A. Lienhardt, THE MILLER LAW FIRM, P.C., Rochester, MI – Counsel for Plaintiffs

Patrick M. Brannigan, Jessica L. Reno, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE; Stephen A. D'Aunoy, Scott H. Morgan, KLEIN THOMAS LEE & FRESARD, St. Louis, MO – Attorneys for Defendant

September 27, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are FCA US LLC's Objections (D.I. 67) to Magistrate Judge

Fallon's July 30, 2024 Report and Recommendation ("the Report") (D.I. 66).   The Report

recommends granting-in-part and denying-in-part FCA US LLC's Motion to Dismiss Plaintiffs'

Consolidated Amended Class Action Complaint ("the CAC") (D.I. 52) for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   FCA US LLC ("FCA US" or

"Defendant") objects to the portions of the Report recommending that motion be denied as to

numerous counts:

> Count I (Common Law Fraud by Omission); Count III (Equitable
> Injunctive/Declaratory Relief – Maryland); Count VI (Common
> Law Breach of Implied Warranty); Count IX (Unjust
> Enrichment/Restitution); Count XVIII (Breach of Implied Warranty
> – Georgia); Count XX (Implied Warranty in Tort - Ohio); Count
> XXI (Breach of Implied Warranty – Pennsylvania); and Counts X,
> XII-XVII, XIX, XXII-XXVIII, XXX-XXXVI (the above consumer
> protection claims, to the extent they are predicated on non-
> misrepresentations (*i.e.* omissions))

(D.I. 67 at 1-2).[1]

---

[1]   No party objects to the Report's recommendation that the motion be granted as to the
following counts:

> Count II (Common Law Fraud, Affirmative Misrepresentation);
> Count V (Mich.CPA); Count VII (Magnuson-Moss Warranty Act);
> Count VIII (Breach of Express Warranty); Count XXIX (WDTPA),
> and the following consumer protection act claims, to the extent they
> assert affirmative misrepresentations: Count IV (Md.CPA); Counts
> X & XII (NY § 349 and NY § 350); Count XIII (MPCFA); Count
> XIV (ICFA); Count XV (MUTPCPA); Count XVI (GFBPPA);
> Count XVII (GUDTPA); Count XIX (OCSPA); Count XXII
> (PUTPCPL); Count XXIII (CLRA); Count XXIV (UCL); Count
> XXV (FAL); Count XXVI (CCPA); Count XXVII (NH.CPA);
> Count XXVIII (OUTPA); Count XXX (Neb.CPA); Count XXXI
> (Mass. Ch. 93A); Count XXXII (Vt.CPA); Count XXXIII
> (Il.CFDBPA); Count XXXIV (NJCFA); Count XXXV
> (Conn.TPA); and Count XXXVI (Wash.CPA).  (D.I. 67 at 1).

The Court has reviewed the Report, FCA US's objections, and the responses thereto. (*See* D.I. 67, 68). Additionally, the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of the Motion to Dismiss and Plaintiffs' response thereto. (*See* D.I. 52, 53, 54, 58). The Court has also reviewed the transcript of the July 16, 2024 hearing held before Judge Fallon and considered the arguments raised therein. (D.I. 65). For the reasons set forth below, FCA US's objections are OVERRULED-IN-PART and SUSTAINED-IN-PART, the Report is ADOPTED-IN-PART and REJECTED-IN-PART, and the Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.

## I.  BACKGROUND

No party has objected to the Report's clear recitation of facts, and the Court adopts that recitation here:

> Plaintiffs are individuals who purchased or leased a 2021-2023 model year Jeep Wrangler 4xe or a 2022-2023 model year Jeep Grand Cherokee 4xe plug-in hybrid vehicle (the "Class Vehicles") designed and manufactured by Defendant. (D.I. 49 at ¶¶ 1, 12-44) The CAC alleges that the Class Vehicles have a defective "Fuel and Oil Refresh Mode" ("FORM") feature which makes electric-only or electric-assisted driving unavailable for extended periods of time. (*Id.* at ¶¶ 1-3, 63) Below is a chart detailing for each named Plaintiff[2] their name, state of residence, and state in which they purchased a Class Vehicle:

| NAME | STATE OF RESIDENCE | STATE OF PURCHASE / LEASE |
|---|---|---|
| Jesse Crowell | New Jersey | Maryland |
| Jason Figley | Pennsylvania | Pennsylvania |
| Kenneth Forst | Minnesota | Minnesota |

As such, and the Court finding no clear error on the face of the record, the Report's recommendation as to these counts will be adopted.

[2]      On July 2, 2024, Plaintiffs voluntarily dismissed plaintiff Jillian Kavanagh from the action pursuant to Fed. R. Civ. P. 21(a)(l)(A)(i). (D.I. 64). At oral argument, the parties confirmed that Joshua Taylor is no longer a named Plaintiff in this matter in accordance with the CAC. (D.I. 65 at 8:11-15).

| NAME | STATE OF RESIDENCE | STATE OF PURCHASE / LEASE |
|---|---|---|
| Stephanie Gelber | New York | New York |
| Christopher Gittings | Montana | Montana |
| Lonnie Heeter | Indiana | Michigan |
| Mike Kwiatkowski | Ohio | Ohio |
| Peter Nau | Iowa | Iowa |
| Bener Saka | New York | New York |
| Robert Thompson | Georgia | Georgia |
| Anshuman Singh | California | California |
| Theresa Clark | Colorado | Colorado |
| Jeremy Erskine | New York | New York |
| Michael Lindgren | Oregon | Oregon |
| Jeffrey Monheit | New Hampshire | New Hampshire |
| Mackenzie Pirie | Michigan | Michigan |
| Amy Schachow | Michigan | Michigan |
| Mike Bennett | Colorado | Colorado |
| Mike Chavez | Colorado | Colorado |
| Jennifer Berner | Nebraska | Oklahoma |
| Frank Koss | Vermont | New York |
| Michael McGowan | Illinois | Illinois |
| Renee & Joshua Miller | Pennsylvania | Pennsylvania |
| Gabriel Morrison | Wisconsin | Wisconsin |
| William Nevitt | New Jersey | New Jersey |
| Matthew Raque | Illinois | Illinois |
| George Souders | Minnesota | Minnesota |
| Chad Altschafl | Wisconsin | Wisconsin |
| Gregory Grigoriou | Connecticut | Connecticut |
| Aaron Kornblum | Washington | Indiana |
| Tracy & John Hansen | Ohio | Ohio |
| Mark Grams | Colorado | New Mexico |

The Class Vehicles have both a gasoline engine and an electric motor to enable gasoline-only, battery-only, or combination driving. (*Id.* at ¶¶ 53, 63)  Defendant advertises the Wrangler 4xe as being capable of up to 21 miles of electric-only driving before switching to the gasoline engine.  (*Id.* at ¶¶ 52, 55-56, 59-62)  The Grand Cherokee 4xe is alleged to have up to 25 miles of pure electric range. (*Id.* at ¶ 70)  Advertisements for the Class Vehicles emphasize their ability to perform in cold weather.  (*Id.* at ¶¶ 72-75)  The Class Vehicles cost between $20,000 and $24,000 more than their gasoline-only counterparts.  (*Id.* at ¶ 54)  Plaintiffs paid this premium to obtain the benefits of the Class Vehicles' electric-only or electric-assisted functionality.  (*Id.* at ¶¶ 5, 93)

The FORM feature in the Class Vehicles is triggered "if the system detects a stale fuel or aged oil condition after a long period without combustion engine operation" to maintain the engine lubrication properties and prevent engine or fuel system damage. (*Id.* at ¶¶ 77-78) The manual states that frequent short trips in cold temperatures may also trigger FORM. (*Id.* at ¶ 79) Originally, the manual indicated that the gasoline engine may need to run for a period of up to 20 minutes when fully warm before exiting FORM. (*Id.* at ¶ 83) This guidance was later amended to increase the estimate to 2.5 hours when fully warm. (*Id.* at ¶ 85) However, some consumers had almost no pure electric-powered transport for months while their Class Vehicles remained in FORM. (*Id.* at ¶¶ 83-84) Defendant acknowledges that vehicles enter FORM more often and for longer stretches when the weather is cold. (*Id.* at ¶ 88)

The Class Vehicles come with a 3-year/36,000 mile Basic Limited Warranty that covers defects "in material, workmanship or factory preparation," a 5-year/60,000 Powertrain Limited Warranty for powertrain components that are defective "in workmanship and materials," and a 10-year/150,000 mile warranty covering the high voltage battery. (*Id.* at ¶¶ 473, 488, 572; D.I. 53, Exs. A-D)

On February 9, 2024, Defendant moved to dismiss the CAC. (D.I. 52). On July 30, 2024, Judge Fallon issued the Report recommending that the motion be granted-in-part and denied-in-part. (D.I. 66). FCA US timely filed objections to the Report's "recommendation that the motion be denied as to: Count I (Common Law Fraud by Omission); Count III (Equitable Injunctive/Declaratory Relief – Maryland); Count VI (Common Law Breach of Implied Warranty); Count IX (Unjust Enrichment/Restitution); Count XVIII (Breach of Implied Warranty – Georgia); Count XX (Implied Warranty in Tort – Ohio); Count XXI (Breach of Implied Warranty – Pennsylvania); and Counts X, XII-XVII, XIX, XXII-XXVIII, XXX-XXXVI (the above consumer protection claims, to the extent they are predicated on non-misrepresentations (*i.e.* omissions))." (D.I. 67 at 1-2).

## II.    <u>LEGAL STANDARD</u>

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the

Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (internal citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal citations omitted).

## III.   <u>DISCUSSION</u>

### A.   **The Fraud-Based Claims (Counts I, II, IV, V, X, XII-XVII, XIX, XXII-XXXVI)**

Plaintiffs allege multiple fraud-based claims both generally and under several states' consumer protection and business laws.  "A fraud claim may take the form of an affirmative misrepresentation or silence in the face of a duty to disclose."  *Peters v. United States HUD*, Civil No. 04:06057 (RBK), 2006 U.S. Dist. LEXIS 4727, *13 (D.N.J. Feb. 1, 2006).  The latter theory of fraud is referred to as "fraud by omission."  Regardless of the theory of fraud, fraud-based claims are subject to the pleading standards in Federal Rule of Civil Procedure 9(b).  To satisfy the Rule 9(b) pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)).  In other words, Plaintiffs must allege the fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Id.*

### 1.   <u>Rule 9(b) (All Omission-Based Counts)</u>

Defendant argues that the CAC does not plausibly plead actionable fraud by omission under Rule 9(b).  Specifically, Defendant argues Plaintiffs do not allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission . . .; and (4) what [Defendant] obtained as a consequence of the alleged fraud."  (D.I. 67 at 5) (citing *Robinson v. Gen. Motors LLC*, Civil Action No. 20-663-RGA-SRF, 2021 WL 3036353, at *5 (D. Del. July 19, 2021)).  The Report, however, recommends the Court deny Defendant's Motion to Dismiss the omission-based fraud claims under Rule 9(b).  The Report held that Plaintiffs adequately pleaded fraud by omission under Rule 9(b) because they alleged "(1) the fact at issue

was basic to the transaction; (2) a legitimate reason to rely on the entity that failed to disclose; and (3) that the claimant could not have discovered the issue."  (D.I. 66 at 8-9) (cleaned up) (citing *Bolton v. Ford Motor Co.*, Civ. Action No. 23-00632-GBW, 2024 WL 3328522 (D. Del. July 8, 2024)).  The Report further reasoned that the Rule 9(b) standard is "relaxed" for allegations of fraudulent omissions where the withheld information was within the Defendant's control:

> To the extent that the Rule 9(b) standard applies, it is relaxed for allegations of fraudulent omissions based on information within the defendant's exclusive control because the plaintiff cannot specify the time, place, and specific content of the omission.  *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018); *see also Bolton v. Ford Motor Co.*, C.A. No. 23-632-GBW, 2024 WL 3328522, at *9 (D. Del. July 8, 2024).  Generally, a pleading must allege: (1) "the fact at issue was basic to the transaction[,]" (2) "a legitimate reason to rely on" the entity that did not disclose the information, and (3) the claimant could not have discovered the issue.  *Bolton*, 2024 WL 3328522, at *9 (quoting Restatement (Third) of Torts: Liab. For Econ. Harm § 13, cmt. d (2020)).

The Court agrees that "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."  *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 216 (3d Cir. 2002); *see also Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2003) ("In cases involving alleged fraud by omission or concealment, it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the defendant."); *see also id.* (collecting federal appellate cases applying a relaxed Rule 9(b) standard for omission-based fraud allegations).  Applying that "relaxed" Rule 9(b) standard, the Court adopts the findings of the Report that the CAC sufficiently alleges fraud by omission because it "plausibly pleads an actionable omission by alleging that the Class Vehicles contained a material defect and Defendant withheld information about it."  (D.I. 66 at 8) (referencing D.I. 49 ¶¶ 94, 97).

Additionally, Defendant argues the omission-based fraud claims should be dismissed for Plaintiffs or class members who purchased model-year 2022 or later vehicles because "the owners' manuals were updated by the time of their purchases to disclose the alleged 'defect.'"  (D.I. 67 at 6).  In other words, Defendant argues that there was no omission because the updated owners' manuals disclosed the defect.  Although the CAC alleges certain Plaintiffs purchased their vehicles *after* the manual was updated, as the Report notes, "Defendant did not disclose the *extent* of the FORM defect."  (D.I. 66 at 8) (emphasis added).  The Report elaborates:

> Here, Plaintiffs allege that Defendant did not disclose the extent of the FORM defect, and the omission was misleading because of Defendant's advertisements highlighting the electric-only range of the Class Vehicles.  (*See, e.g.*, D.I. 49 at ¶¶ 94, 415, 419, 430, 434, 522, 539, 556, 560)  The CAC also avers that the Class Vehicles' electric driving capabilities were basic to the transactions because Plaintiffs paid a significant premium for the hybrid features.  (*Id.* at ¶¶ 5, 54, 93)  Plaintiffs further claim that, had they known about the true extent of the FORM defect at the time of sale or lease, they would not have purchased the Class Vehicles.  (*See, e.g.*, *id.* at ¶¶ 120, 130, 142, 161, 171, 179, 187, 198, 208, 216, 222)  These averments are sufficient to support Plaintiffs' fraud-by-omission claims.  *See Bolton*, 2024 WL 3328522, at *9 (denying motion to dismiss fraud-by-omission claims where the complaint alleged an omission of information that altered the drivability of the vehicles and stated that the plaintiffs would not have purchased or leased the vehicles if they had known of the defect).

As the Report correctly observes, Plaintiffs allege Defendant withheld information about the material defect – including in the updated manuals.  Specifically, the CAC avers the manual does not disclose "a temperature threshold whereupon the vehicle becomes 'fully warm;'" how to tell why the vehicle entered FORM; or how long the vehicle will be in FORM.  (D.I. 49 ¶¶ 86, 87).  Accordingly, the Court finds that Plaintiffs plausibly pleaded that the updated manuals contained an omission and agrees with the Report's reasoning and its analysis of the CAC.  Defendant's objections concerning the Rule 9(b) pleading for the omission-based fraud counts are overruled.

### 2.    Pre-Sale Knowledge (All Omission-Based Counts)

For each omission-based fraud claim, Plaintiffs must plead that Defendant had pre-sale knowledge of the defect.  *Kimball v. Volkswagen Grp. of Am., Inc.*, Civil Action No.22-cv-4163, 2023 WL 5533343, 2023 U.S. Dist. LEXIS 151010, at *7 (D.N.J. Aug. 28, 2023) (citing *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1092 (S.D. Cal. 2016)).  Defendant argues that Plaintiffs' omission-based fraud counts fail because Plaintiffs do not adequately plead pre-sale knowledge.  (D.I. 58 at 3-4).  Although the CAC avers that Defendant had pre-sale knowledge of the defect through customer complaints, information sent by dealers, internal records from pre-sale durability testing – and then later had partially disclosed the defect in the owner's manual and technical service bulletins – Defendant argues that each of these allegations, individually, insufficiently alleges pre-sale knowledge.  Phrased differently, Defendant urges the Court to examine "each pleaded knowledge source and allegation individually, since merely grouping a series of plainly deficient allegations together cannot equate to a plausible averment of pre-sale knowledge."  (D.I. 67 at 7).  The Court disagrees.  To assess pre-sale knowledge properly, "courts consider 'the totality of allegations . . . collectively' and do not, as [Defendant's] brief does, attack each allegation one-by-one."  *Opheim v. Volkswagen Aktiengesellschaft*, Civ. No. 20-02483 (KM)(ESK), 2021 WL 2621689, 2021 U.S. Dist. LEXIS 118735, *40 (D.N.J. June 25, 2021) (quoting *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 227 (D.N.J. 2020)).  The Report likewise concluded:

> Defendant's position is not persuasive because knowledge may be alleged generally.  Fed. R. Civ. P. 9(b); *see also Bolton*, 2024 WL 3328522, at *10.  "[I]n assessing pre-sale knowledge under this standard, courts consider the totality of the allegations . . . collectively and do not . . . attack each allegation one-by-one."  *Opheim*, 2021 WL 2621689, at *15 (internal citations and quotation marks omitted).  The CAC references multiple sources, including a technical service bulletin, consumer complaints, changes to the owner's manual, online forum posts, and Defendant's pre-sale

design and testing of the Class Vehicles.  (D.I. 49 at ¶¶ 6, 48, 80, 85, 95, 98-100)  Defendant represented in its promotional materials that it had "logged over 1.4 million miles of real world on-road and off-road validation in all the corners of the world to make sure it's ready."  (*Id.* at ¶ 63)  Viewed collectively, these allegations support an inference of Defendant's pre-sale knowledge of the FORM defect.  *See Opheim*, 2021 WL 2621689, at *15 (rejecting the defendant's effort to go through each source individually, and finding sufficient plaintiffs' allegations that the defendant knew generally that the timing chain was a problem); *see also McCoy*, 2023 WL 6140641, at *5 ("[A]nalyzing the allegations in their entirety, the online posts and allegations of warranty claims add to the plausible, though hardly compelling, inference that [the defendant] had pre-sale knowledge.").

Additional information relevant to the pre-suit knowledge inquiry is in Defendant's hands and should be tested through the discovery process.  *See id.* ("Where, as here, the relevant information is in the defendant's hands, the Court will more readily open the doors of discovery.").  The issuance of service bulletins and changes made to the owner's manual following the purchase of some of the Class Vehicles does not necessarily contradict Plaintiffs' allegations of pre-sale knowledge when viewed in the context of the pleaded averments more broadly.  *See Robinson*, 2021 WL 3036353, at *6 (explaining that service bulletins issued post-sale may support an inference of the seller's pre-sale knowledge of the defect); *see also Bolton*, 2024 WL 3328522, at *10-11 (concluding that allegations of pre-release testing data, together with allegations of service bulletins and complaints, were sufficient to plausibly plead pre-sale knowledge even where no pleaded facts showed internal testing actually alerted the defendant to the defect).  When post-sale complaints and service bulletins are considered along with allegations of pre-sale testing, it is reasonable to infer that such testing revealed the same defect discovered by consumers subjecting the Class Vehicles to ordinary use.  *See Almeida v. Apple, Inc.*, 2023 WL 3149252, at *1 (N.D. Cal. Mar. 1, 2023); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 684-85 (E.D. Mich. 2020).

The Court finds that the Report's reasoning is sound, is supported by the relevant case law, and properly considers the allegations in the CAC.  The Court agrees with the Report, and Defendant's objection regarding "pre-sale knowledge" is overruled.

**3.**     **Duty to Disclose (All Omission-Based Counts, Except XXX & XXXI)**

Defendant urges the Court to reject the Report's determination that Plaintiffs adequately

alleged a duty to disclose, which is a prerequisite under several states' laws for alleging omission-

based fraud.  Defendant argues that "only certain states recognize partial misleading disclosures

as sufficient to trigger a duty to disclose, and that, even among those that do, a plaintiff must allege

that he or she relied upon a specific misrepresentation, which none do here."  (D.I. 67 at 8)

(emphasis excluded).  In its Motion to Dismiss, Defendant argued that Colorado, Illinois, New

Hampshire, New Jersey, Oregon, Pennsylvania, and Washington do not "recognize a duty to

disclose" under the alleged circumstances.  (D.I. 53 at 24)  With respect to that issue, the Court

has carefully reviewed the record *de novo* as well as the Report, which states:

> Defendants next contend that the CAC does not allege the existence
> of a fiduciary relationship which would trigger a duty to disclose, as
> required to state a claim for fraud in many states.  (D.I. 53 at 15)
> Plaintiffs maintain that the CAC satisfies any state statutory or
> common law requirements pertaining to the duty to disclose by
> alleging that Defendant had superior knowledge of the defect and
> suggesting that Defendant made a partial, incomplete disclosure
> about the Class Vehicles' capabilities in cold weather.  (D.I. 54 at
> 11-12)
>
> The CAC contains plausible allegations that Defendant had superior
> and/or exclusive knowledge of the frequency and duration of the
> FORM defect, which could not be discovered by consumers until
> the FORM cycle was triggered.  (D.I. 49 at ¶¶ 6, 49-50, 111)  The
> CAC also plausibly alleges that Defendant made partial, inaccurate
> disclosures about the operation of the Class Vehicles in electric-only
> mode and the capabilities of the Class Vehicles for electric-only
> driving in cold weather.  (*Id.* at ¶¶ 3-5, 70-75)  As previously stated
> at § III.A.1, *supra*, the owner's manuals disclosed that FORM may
> be triggered under certain conditions, but these disclosures
> underestimated the potential length a Class Vehicle would remain in
> FORM and did not disclose material information about the
> frequency at which FORM may manifest or the conditions necessary
> to exit FORM.  (*Id.* at ¶¶ 77-79, 82-86; D.I. 65 at 58:11-22)  For
> state statutory and common law claims that require a duty to
> disclose, these allegations are sufficient to establish that the duty
> existed here.  *See, e.g.*, *Murphy v. Toyota Motor Sales USA Inc.*,

2021 WL 2801456, at *5 (C.D. Cal. Apr. 21, 2021) (explaining that fraud claims based on omission depend on allegations of a duty to disclose on the part of the defendant).[3]

The Court finds that the Report's reasoning is sound and grounded in the CAC's allegations. The Court agrees with the Report's recommendation, and Defendant's objection is overruled.[4]

4.    **State-Specific Issues**

a.    **The Economic Loss Doctrine** [5]

Defendant asks the Court to Dismiss Plaintiffs' fraud-based claims in California, Colorado, Maryland, Michigan, Nebraska, New Hampshire, New York, Georgia, Ohio, Oregon, Pennsylvania, and Wisconsin because the "claims at issue are barred under the economic loss doctrine." (D.I. 67 at 8; D.I. 53 at 17). The Report recommends the Court deny Defendant's motion without prejudice because "application of the doctrine varies across states, and the law remains unsettled in some of the jurisdictions at issue here." (D.I. 66 at 13). Defendant, however, "urges the Court to disregard the Magistrate's recommendation and conduct its own state-by-state, claim-by-claim analysis based on [its] cited authorities, after which it should dismiss the relevant

---

[3]    There, the Central District of California determined a plaintiff properly pleaded omission-based fraud and a duty to disclose under Colorado and Washington law. 2021 WL 2801456 at *18-*24.

[4]    The Court acknowledges that "different states impose a duty to disclose a defect under different circumstances," and that in certain circumstances it is proper to "analyze the parties' competing case law on a state-by-state basis." *Roe v. Ford Motor Co.*, Case No. 18-12528, 2021 U.S. Dist. LEXIS 114890, *28 (E.D. Mich. June 21, 2021). The Court, however, believes that Judge Fallon's approach to the economic loss doctrine is also applicable and appropriate here. (D.I. 66 at 13-14) (deciding to defer a ruling on state-specific issues to avoid a "drive by *Erie* guess.").

[5]    The economic loss doctrine precludes recovery in tort for injuries solely economic in nature. *Automated Precisions, Inc. v. Pare*, 631 F. Supp. 3d 185, 2022 U.S. Dist. LEXIS 174612, 2022 WL 4482719, at *11 (D. Del. 2022) (quoting *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 459 (D. Del. 2013)).

counts . . ..."  *Id.*  The Court, after conducting *de novo* review, agrees with the Report's following

recommendation:

> The parties' briefing on the economic loss doctrine is limited to
> competing string citations with little context or analysis.  (D.I. 54 at
> 13 n.13; D.I. 58 at 5-6)  Confronted with a similar situation, one
> court recently declined to make a "drive by *Erie* guess"  for each
> state's law, observing that "a federal court sitting in diversity must
> proceed with caution in making pronouncements about state law."
> *In re Generac Solar Power Sys. Mktg., Sales, Practices, & Prods.
> Liab. Litig.*, 2024 WL 2519778, at *7 (E.D. Wis. May 24, 2024)
> (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087,
> 1092 (7th Cir. 1999)).  In deferring a ruling on the application of the
> economic loss doctrine, the court observed the "limited utility in
> taking a scalpel to the complaint and excising only a few of
> plaintiffs' many legal theories."   *Id.*   The same approach is
> warranted here.

Accordingly, the Court declines to dismiss Plaintiffs' fraud claims on the grounds they are

barred by various states' economic loss doctrines and defers a ruling on this issue until further

briefing and argument have been conducted.

### b.    Georgia Uniform Deceptive Trade Practices Act Prohibition on Monetary Relief  (Count XVII)

Defendant also argues that Plaintiffs do not allege "actual continuing harm" which is

necessary for injunctive relief under the Georgia Uniform Deceptive Trade Practices Act

("GUDPTA").   (D.I. 67 at 8).   Plaintiffs, however, argue that "allegations of ongoing

misrepresentation, including those made in connection with the servicing of Plaintiffs' vehicles,

qualify as continuing harm for which injunctive relief and damages are appropriate remedies."

(D.I. 68 at 9-10).  In *Amin v. Mercedes-Benz USA, LLC*, the Northern District of Georgia denied a

defendant's motion to dismiss a GUDPTA claim where the plaintiffs "alleged that when they

brought their vehicles to Mercedes for service related to the defect, Mercedes represented that the

Class Vehicles were defect-free and possessed a certain quality with respect to the HVAC Systems

– namely, the quality of being free from the specific defect alleged."  301 F. Supp. 3d 1277, 1295

(N.D. Ga. 2018).  Here too, the Report determined that "the CAC contains plausible averments of continuing harm" and denied Defendant's Motion to Dismiss.  (D.I. 66 at 14) (citing D.I. 49 ¶¶ 585, 593) (alleging that Defendant continues to "actively conceal[] the material information about the Class Vehicles;" "represent[] to Plaintiff Thompson and members of the Georgia Subclass that the Class Vehicles and the compromised hybrid system preforms better than it in fact does and is suitable for certain uses for which it is not suited;" and Plaintiffs continually pay for related "diagnoses, repairs, and replacements.").  The Court agrees with the Report's recommendation and finds that, viewing the allegations in the CAC in the light most favorable to Plaintiffs, Plaintiffs plausibly allege a continuing harm sufficient to state a claim under GUDPTA.  Defendant's objection is overruled.

### c.    Oregon Unlawful Trade Practices Act Statute of Limitations (Count XXVIII)

The Report recommends denying Defendant's Motion to Dismiss Plaintiffs' claim under the Oregon Unlawful Trade Practices Act on the grounds that Plaintiffs' claim is time-barred.  With respect to that issue, the Court has carefully reviewed the record *de novo* as well as the Report, which states:

> There is no dispute that Plaintiff Lindgren leased his vehicle on July 13, 2021, and this suit was not brought until January 31, 2023.  (D.I. 49 at ¶ 238)  However, Plaintiffs allege that the statute of limitations is tolled by the discovery rule, and Lindgren did not discover the defect until shortly before the commencement of the action.  (D.I. 54 at 15)
>
> The CAC generally states that "Plaintiffs and Class members did not discover, and could not have discovered, through the exercise of reasonable diligence, that the Class Vehicles had one or more design and/or manufacturing defects that blocked access to electric-only mode more often and for longer than was reasonable."  (D.I. 49 at ¶ 49)  A dispute of fact exists regarding precisely when Lindgren discovered the defect after leasing the vehicle in July of 2021.  *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 139 (Or. 2015) ("[I]f disputed facts must be resolved to determine if a claim is time

14

barred, those facts must be resolved by the finder of fact at trial."). The pleaded facts show that some Plaintiffs did not experience the defect until approximately five to six months after purchasing the vehicle, and one Plaintiff drove 10,500 miles before experiencing the alleged defect.  (D.I. 49 at ¶¶ 109, 113, 167, 189, 193)  Thus, it is plausible to infer that Lindgren may not have discovered the defect until at least January 31, 2022, one year prior to the filing of this lawsuit.   The case authority cited by Defendant is distinguishable because it did not involve a product defect, and the plaintiff claimed she did not discover the alleged misrepresentation until eight years after the misrepresentation was made—a much more significant gap than the six month period in question in the instant case.  *See Swango v. Nationstar Sub1, LLC*, 2018 WL 4100661, at *10 (D. Or. Aug. 27, 2018).  I recommend that the court DENY Defendant's motion to dismiss Count XXVIII on this basis.

The Court finds that the Report's reasoning is logical and is supported by case law and the record.  The Court agrees with the Report, and Defendant's objection as to Count XXVIII is overruled.

> **d.    The California Consumer Legal Remedies Act Claim (Count XXIII) and the California Unfair Competition Law Claim (Count XXIV)**

Plaintiffs seek equitable relief under the California Consumer Legal Remedies Act ("CLRA") and the California Unfair Competition Law ("UCL").  (D.I. 49 ¶¶ 654-666, 667-673). Defendant, however, argues Plaintiffs may not plead alternative remedies under both the CLRA and UCL.  (D.I. 67 at 9).  The Report disagreed and recommended the Court deny Defendant's Motion to Dismiss Count XXIV on that basis.  (D.I. 66 at 25-27).  Defendant objected.  The Court will sustain that objection and dismiss Plaintiffs' claim for relief under the UCL.

"Under the UCL, a plaintiff may only seek the equitable relief of restitution and/or an injunction."  *Shay v. Apple Inc.*, Case No.: 20cv1629-GPC(BLM), 2021 U.S. Dist. LEXIS 84415, at *5-6 (S.D. Cal. May 3, 2021).  Thus, the Court views Plaintiffs' present claim for relief under the UCL as a purely equitable claim.  When evaluating claims for equitable relief under California's UCL and CLRA, the Ninth Circuit has required that lower courts "apply equitable

principles derived from federal common law," including "the principle precluding courts from awarding equitable relief when an adequate legal remedy exists." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 at 837, 842 (9th Cir. 2020). District Courts across the Ninth Circuit have understood the Ninth Circuit's decision in *Sonner* to "require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021); *see also Adams v. Haan*, Case No. SACV 20-913 JVS (DFMx), 2020 U.S. Dist. LEXIS 176002 (C.D. Cal. Sept. 3, 2020) (applying "[t]he clear rule in *Sonner* that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief."); *see also Johnson v. Trumpet Behavioral Health, LLC*, Case No. 3:21-cv-03221-WHO, 2022 U.S. Dist. LEXIS 3706, *8 (N.D. Cal. Jan. 7, 2022) (holding that "*Sonner*, by its own terms, requires at the pleadings stage [] that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.'"). In other words, a plaintiff may not maintain an equitable claim under the UCL if it has an adequate legal remedy under the CLRA, which provides for either legal or equitable relief, or both. *See Guzman v. Polaris Indus.* 49 F.4th 1308, 1312 (9th Cir. 2022) ("[I]f plaintiffs [have] an adequate legal remedy under the CLRA, they [can] not also maintain equitable claims under the UCL and CLRA in federal court.").

Here, Plaintiffs' claim for equitable relief under the UCL fails because it does not plead there is an inadequate remedy at law under the CLRA or otherwise. *See Hunter v. FCA US LLC*, Case No. 22-cv-06777-HSG, 2023 U.S. Dist. LEXIS 130381, at *10 (N.D. Cal. July 27, 2024) ("A claim for equitable relief fails when it does not plead the inadequacy of remedies at law."). The CAC does not allege that Plaintiffs or the California Subclass will suffer irreparable harm or similar injury absent equitable relief. Plaintiffs also did not plead their UCL claim in the alternative. "While the Court does not typically require parties to plead magic words to survive

dismissal, [the] Court has interpreted the Ninth Circuit's guidance on this particular issue as, at the very least, requiring a simple allegation that legal remedies are inadequate in order to state an equitable claim for relief." *Turner v. Porsche Cars N. Am., Inc.*, Case No. CV 23-06465-MWF (MRWx), 2023 U.S. Dist. LEXIS 225946, at *18 (C.D. Cal. Dec. 19, 2023). Therefore, the Court will sustain Defendant's objection and grant Defendant's Motion to Dismiss Plaintiffs' claim for relief under the UCL (Count XXIV). Should Plaintiffs desire to amend their complaint, they may do so in accordance with this Court's procedures.

### B.     The Equitable Claims (Counts III & IX)

Next, Defendant contends the Court should dismiss the equitable claims because "an unjust enrichment claim is not legally viable where the complaint does not allege facts showing the plaintiff conferred a benefit upon defendant (*i.e.*, a 'direct' benefit) or interacted with defendant." (D.I. 53 at 29). Although the Court generally agrees with Defendant's statement of the law, the Court finds that the CAC plausibly alleges that Plaintiffs conferred a benefit upon Defendant. Plaintiffs allege "Defendant received a benefit from Plaintiffs and members of the Nationwide Class and State Subclasses in the form of payment for the Class Vehicles." (D.I. 49 ¶ 484). Additionally, the Court agrees with the Report and finds that the unjust enrichment claim may be pled in the alternative. *See Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*, C.A. No. 09-902-JJF-MPT, 2010 U.S. Dist. LEXIS 152669, at *10 (D. Del. July 21, 2010) (denying defendants' motion to dismiss an unjust enrichment claim where the complaint both asserted contract and quantum meruit theories because "plaintiff need not make a pretrial election between those theories.").

Second, Defendant argues Count III, seeking injunctive relief under Maryland law, should be dismissed because "there are no allegations showing Plaintiff's legal remedies are inadequate, a threshold requirement for pleading any equitable claim." (D.I. 53 at 28). The CAC, however,

explicitly alleges that "Plaintiff Crowell and members of the Maryland Subclass, and the public will suffer irreparable harm if FCA is not ordered to offer recission." (D.I. 49 ¶ 407) (*see also id.* ¶ 482) ("Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs."). Plaintiffs aver that "[s]uch irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Vehicles . . . [and] paying for diagnoses, repairs, replacements. . .." (*Id.* ¶ 408). In accordance with the Report, the Court overrules Defendant's objections to the equitable claims in Counts III and IX.

**C.      Breach of Implied Warranty of Merchantability (Counts VI, XVII, XX, XXI)**

Plaintiffs assert several counts for breach of the implied warranty of merchantability: common law breach of implied warranty (Count VI); violation of Georgia's Uniform Deceptive Trade Practices Act on behalf of the Georgia Subclass (Count XVII); breach of implied warranty in tort on behalf of the Ohio Subclass (Count XX); and breach of implied warranty on behalf of the Pennsylvania Subclass (Count XXI).

**1.      Lack of Merchantability (Counts VI, XVII, XX, and XXI)**

Generally, to state a claim for breach of the implied warranty of merchantability, a plaintiff must sufficiently allege that "a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owners." *Sheris v. Nissan N. Am., Inc.*, Civ. No. 07-2516 (WHW), 2008 U.S. Dist. LEXIS 43664, WL 2354908 at *6 (D.N.J. June 3, 2008). Defendant argues Plaintiffs' claims for breach of the implied warranty of merchantability should be dismissed because the Class Vehicles can be driven in electric mode and because Plaintiffs' safety risk allegations are implausible. (D.I. 67 at 10-11). The Report recommended denying Defendant's motion. (D.I. 66 at 19). The Court has carefully reviewed the record *de novo* as well as the Report, which states:

> The CAC alleges that the Class Vehicles are not merchantable or fit
> for their ordinary purpose because they are plug-in hybrid vehicles
> that do not reliably provide electric-only or electric-assisted

operation.   (D.I. 49 at ¶¶ 445, 450-51)   Recent case authority supports Plaintiffs' position that this is enough to state a claim for breach of the implied warranty of merchantability at this early stage. In *Kavon v. BMW of North America, LLC*, the court explained that "battery-powered propulsion is arguably the very feature which induces a consumer to purchase the [Class Vehicle] in the first place. A consumer purchases a [Class Vehicle] at a premium based on the expectation that the vehicle will run, most of the time, on electricity rather than gasoline." 605 F. Supp. 3d 622, 637 (D.N.J. 2022); *see also In re Chrysler Pacifica*, 2023 WL 8602971, at *23 ("The defendant's position entirely ignores the fact that a major component of the class vehicles' 'ordinary and intended use' . . . is the ability of the vehicle to drive entirely on stored electric charge for substantial distances, thereby achieving superior gas mileage."). As a result, the court declined to dismiss the claim for breach of the implied warranty of merchantability based on the defendant's recall instructing users not to use their hybrid vehicles' electric mode. *Id.* By alleging that the defect prevents Plaintiffs from routinely driving on electric power, the CAC plausibly states that the Class Vehicles are not fit for their ordinary purpose. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 979 (E.D. Mich. 2022) (explaining that a claim for breach of the implied warranty of merchantability may survive a motion to dismiss even where the plaintiff can continue to drive the vehicle).

Even if the court were to follow other case authority holding that limitations on a hybrid vehicle's electric-only range do not render the vehicle unmerchantable, *see, e.g.*, *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016), *aff'd sub nom.* 708 F. App'x 242 (6th Cir. 2017), the allegations in the CAC would nonetheless support the recommended denial of Defendant's motion to dismiss the implied warranty claims.  Plaintiffs have identified a safety risk associated with the alleged defect in the form of diminished acceleration. (D.I. 49 at ¶¶ 129, 141, 159, 170, 178, 186, 197, 207, 215, 221, 228, 235, 241, 266, 272, 279, 369) It is well-established that a vehicle must provide safe transportation and operate in a safe condition to satisfy the requirements of merchantability. *See In re Chrysler Pacifica*, 2023 WL 8602971, at *22.  Although the risk of diminished acceleration may not pose the same level of safety risk as the risk of battery combustion in *In re Chrysler Pacifica*, courts have found lesser safety risks sufficient to satisfy the requirements of a claim for breach of the implied warranty of merchantability. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 947-48 (N.D. Cal. 2018) (denying summary judgment on claim for breach of the implied warranty of merchantability where the defective rear-view

19

camera whose image spontaneously froze when car was in reverse posed a safety hazard). Whether the defect is "so severe that the [Class Vehicles] could not be said to provide safe, reliable transportation is a question of fact for the jury." *Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 441 (D. Del. 2023) (quoting *Click v. Gen. Motors LLC*, 2020 WL 3118577, at *11 (S.D. Tex. Mar. 27, 2020)).

The Report closely considered the allegations, the relevant case law, and the arguments put forth by the parties. The Court agrees with the Report's reasoning and analysis, as well as the conclusion. Defendant's objection regarding whether Plaintiffs adequately pleaded lack of merchantability is overruled.

## 2. Lack of Notice (Counts VI, XVII, XXI)

Second, Defendant moved to dismiss Counts VI, XVII, and XXI because Plaintiffs failed to provide adequate pre-suit notice as required under Georgia and Pennsylvania law. The Report recommended the Court deny Defendant's motion, as detailed below:

> Defendant's pre-suit notice argument does not provide a basis for dismissal of Plaintiffs' implied warranty claims. The CAC alleges that "Defendant was put on constructive notice about its breach through its review of consumer complaints and upon information and belief, through product testing and communications from dealerships." (D.I. 49 at ¶ 454) Although different states have different levels of strictness regarding the notice requirement, the sufficiency of the notice is generally an issue of fact if the pleading alleges the defendant has at least some notice. *See Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1279 (E.D. Mich. Mar. 31, 2021); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, 2014 WL 3557189, at *7 (M.D. Pa. July 17, 2014) ("Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact."); *Dermatology Specialists of Augusta, Inc. v. Daikin Applied Ams. Inc.*, 2019 WL 97831, at *3 (S.D. Ga. Jan. 3, 2019) ("The issue of whether notice was reasonably given and sufficient to provide the defendant with an opportunity to cure . . . is generally reserved for summary judgment or trial.").

The Court, after conducting its own, independent *de novo* review, agrees with the reasoning in the Report and its conclusion; therefore, Defendant's objection is overruled.

### 3.      Privity (Count XV)

Next, Defendant argues that Count XV should be dismissed because Plaintiffs fail to allege privity between Plaintiffs and Defendant, which is a requirement to state a claim for breach of implied warranty under Georgia law.  (D.I. 53 at 24); (D.I. 67 at 11).  Courts in Georgia have determined that "[n]ormally, no implied warranty of merchantability exists between a manufacturer and a remote consumer because no privity of contract exists between them.  However, privity of contract can exist between a buyer and a manufacturer if the manufacturer extends an express warranty to the buyer." *Barnes ex el. Gibson v. Medtronic, Inc.*, Civil Action No. 1:20-CV-04310-JPB, 2021 U.S. Dist. LEXIS 159341, at *9-10 (N.D. Ga. Aug. 24, 2021); *see also Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974) ("[W]here an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as part of the sale a warranty by the manufacturer running to the purchaser, privity exists."); *see also Dermatology Specialists of Augusta, Inc. v. Daikin Applied Americas Inc.*, CV 116-058, 2019 U.S. Dist. LEXIS 1133, 2019 WL 97831, at *5 (S.D. Ga. Jan. 3, 2019) ("The essential element to bridge the privity gap is the manufacturer providing an express warranty for the product sold to the remote consumer.").  Here, Plaintiffs allege that Defendant extended express warranties. *Id.* at *10; (*see also* D.I. 49 ¶¶ 466-481); (*see also* D.I. 53 at 34) (Defendant conceding it made express warranties in the booklets in the Class Vehicles).  Consequently, Plaintiffs may pursue their breach of implied warranty of merchantability claim under Georgia law because the CAC has sufficiently alleged privity.  Defendant's objection to the Report's same conclusion is overruled.

### D.      The Nationwide Allegations (Counts I, II, VI, VII, and IX)

Last, Defendant urges the Court to dismiss the "nationwide allegations" (Counts I, II, VI, VII, and IX) because Plaintiffs do not "attempt to plead the claims under the applicable states'

laws for all fifty states" and "Plaintiffs lack standing to assert claims under the laws of states where

they do not reside and did not purchase any vehicle." (D.I. 53 at 39). Plaintiffs respond that they

have standing because at least one class representative has standing, and because an "analysis of

raising claims under other states' laws goes to a question for class certification not a motion to

dismiss." (D.I. 54 at 45). The Court reviewed the parties' arguments as well as the Report, which

states:

> I recommend that the court DENY Defendant's motion to the extent
> that it asserts the nationwide class allegations as an independent
> basis for dismissal of Counts I, II, VI, VII, VIII, and IX at this stage
> of the proceedings. Instead, the matter of standing—specifically,
> whether named Plaintiffs may bring class action claims under the
> laws of states where the named Plaintiffs do not reside—is
> appropriately deferred until after class certification. *See Garner v.
> Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022)
> ("Any problem with raising claims under several states' laws goes
> to the propriety of class certification, not standing."); *Maugain*,
> 2023 WL 1796113, at *4-5 (adopting approach taken in *Garner*); *In
> re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust
> Litig.*, C.A. No. 20-1076-CFC, 2022 WL 2438934, at *16 (D. Del.
> July 5, 2022) (deferring consideration of standing in other states
> until after class certification rather than "wad[ing] through complex
> issues of jurisdiction and constitutional law[.]").

The reasoning in the Report is reinforced by a detailed examination of recent case law in

this jurisdiction. The Court acknowledges that there is a split amongst district courts as to when

the standing inquiry should occur in a class certification. Both Plaintiffs and Defendant present

relevant authorities that support their respective, competing contentions. Nevertheless, the Court

finds Judge Bibas' observation most persuasive: "a plaintiff's injury is not pegged to the laws of

different states: an injury is an injury even if no law allows recovery." *Garner v. Global Plasma

Sols.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022) (holding that "raising claims under several states'

laws goes to the propriety of class certification, not standing."). Resultantly, the Court adopts the

recommendation in the Report and will defer the standing inquiry until class certification. Should

FCA US think the nationwide claims are not identical, and will differ from state to state, it can raise that in connection with class certification.

## IV.  <u>**CONCLUSION**</u>

For the reasons stated above, FCA US's objections to the Report are OVERRULED-IN-PART and SUSTAINED-IN-PART, and the Report is ADOPTED-IN-PART and REJECTED-IN-PART.